[Civ. No. 1987. Third Appellate District.—March 2, 1920.]

THE PEOPLE ex rel. HUGH B. BRADFORD, District Attorney, Respondent, v. CHAS. T. BURCH et al., Appellants.

[1] RED-LIGHT ABATEMENT ACT—NATURE OF PROCEEDING.—An action under the "Red-light Abatement Act" is not one for the abatement of prostitution, or of assignation or of lewdness, but one for the abatement of a public nuisance committed or maintained by the habitual practicing in a building or in or on any premises of acts of prostitution, or assignation or lewdness, and is a civil and not a criminal action.

[2] ID.—EXISTENCE OF NUISANCE — CONSTRUCTION OF FINDINGS.—In this action under the "Red-light Abatement Act," the implication from the findings of the trial court, when considered, as they must be, in their entirety and by the light of the averments of the complaint, is that a nuisance existed in and on the premises complained of at the time of the commencement of the action, and that thus the proposition was determined by the court.

[3] ID.—TESTIMONY OF PAID WITNESSES—REFUSAL OF PROPER CROSS-EXAMINATION — ABSENCE OF PREJUDICIAL ERROR.—While it would have been proper for the trial court, in such case, to have allowed the defendants to ask certain witnesses for the relator, on cross-examination, how much they were paid for their services in securing proof against places in which prostitution or assignation or lewdness was carried on, and whether the compensation for their services in procuring evidence sufficient to establish a case against the defendants was contingent upon their success in that behalf, the disallowance of such cross-examination will not be held prejudicial where it appears from the record that the result would not have been any different from what it was had such cross-examination been permitted.

[4] ID.—REPUTATION OF PREMISES—PROOF BY NONRESIDENT WITNESSES —ABSENCE OF PREJUDICE.—Where there was other evidence directly showing that acts of lewdness were, and had been for some time prior to and down to the time of the commencement of the action, customarily practiced in the building in question, it cannot be held that the error, if it was error, of the trial court in permitting witnesses who were nonresidents of the county in which the premises were situated to testify as to their general reputation was prejudicial in its effect upon the rights of the defendants or that it resulted in a miscarriage of justice.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

White, Miller, Needham & Harber for Appellants.

Hugh B. Bradford, District Attorney, for Respondent.

Raymond Benjamin, *Amicus Curiae.*

HART, J.—The action was brought under the "Red-light Abatement Law," the property affected being a one-story brick building known as No. 119 K Street, in the city of Sacramento. The property was owned by the estate of Mary Sweeney, deceased, and Charles T. Burch was the owner of the personal property situated in the premises, which were known as the Casino Theater and Dance Hall. The judgment enjoined the use of the premises "for the purpose of acts of lewdness," directed the sheriff to close the building and keep it closed for one year, and also directed

him to remove and sell all of the furniture, fixtures, and
musical instruments in said building. The appeal is by
said Burch and Ella Ryan, as executrix, etc., named in the
complaint as respondents, and who will hereinafter be re-
ferred to as the appellants.

The first point advanced by the appellants is that three
separate and distinct causes of action are stated in the com-
plaint but not separately stated, and that for that reason
said pleading was faulty and the demurrer thereto should
have been sustained. It is further contended, in this con-
nection, that the acts constituting the "lewdness" the prac-
ticing of which the complaint charged, and the court found,
constituted the nuisance maintained in and at the premises
complained of should have been specifically set forth. As
to this proposition, counsel for the appellants say:

"The complaint, we believe, was sufficient so far as a
general demurrer was concerned, for it contained the es-
sential allegations to charge that the premises constituted
a nuisance because of the alleged acts of prostitution and
assignation, but it did not contain a sufficient statement of
facts to establish a nuisance based on the ground of lewd-
ness. Had the court sustained the special demurrer on the
ground that the complaint contained three causes of action
which should have been separately stated, appellant would
then have been entitled to interpose a general demurrer to
each count, and a general demurrer to the count, alleging
lewdness would have been well taken in the event respondent
had seen fit to plead it in the same language made use of
in the complaint now before the court. How different would
the judgment have been in such event! Respondent would
have been denied relief because adequate proof was wanting
on the counts charging prostitution and assignation and the
demurrer would have been sustained to the third count
alleging lewdness because respondent could not have pleaded
sufficient facts to make out a case on that ground. Judg-
ment, therefore, would have gone for appellant. This must
be so, because the record discloses evidence of no single act
which could be termed lewd, unless we include evidence of
facts transpiring long after the pleadings were settled."

The reply to both the above-stated propositions and the
argument of counsel in support thereof is to be found in
the case of the *People ex rel. Bradford* v. *Laine,* 41 Cal.

App. 345, [182 Pac. 986], a petition for a hearing of which by the supreme court was denied, and to which we refer for a full discussion of said points. [1] We may say, however, that in the case named it was pointed out that an action under the "Red-light Abatement Act" is not one for the abatement of prostitution, or of assignation or of lewdness, but one for the abatement of a public nuisance committed or maintained by the habitual practicing in a building or in or on any premises of acts of prostitution, or assignation or lewdness, and that it is a civil and not a criminal action. We may add that if it were a distinct crime to practice lewdness in any manner in which acts of lewdness may be committed, then in a complaint or an information or indictment charging such offense it would be necessary to describe the specific acts constituting the lewdness. But, as stated, the situation in a case of this character is entirely different, the thing directly aimed at by the action being the nuisance. The cases cited in the Laine case, *supra,* sustain this view. (See, also, *People* v. *Peterson,* 45 Cal. App. 457, [187 Pac. 1079], and cases therein cited.)

Another point raised in the present appeal is that evidence of the sale of intoxicating liquors in the Casino dance-hall was improperly admitted. Our decision in the Laine case, *supra,* also disposed of this point adversely to the contention of appellants.

[2] It is next urged that, as the complaint alleged and the answer denied that a nuisance existed at the commencement of the action, a determination of the issue thus raised was necessary, and that the court did not determine the question. The allegation of the complaint, which was filed September 24, 1917, in this particular was: "That on or for some time prior to the fifteenth day of September, 1917, and ever since that date, said premises were and now are used for the purposes of lewdness," etc.

The court found that certain facts existed, among which were certain enumerated acts of lewdness practiced by the inmates of the building complained of, the dates of the commission of said acts being specifically given. One of the dates on which it was found that acts of lewdness were committed by female inmates of the place was September

15, 1917, before the date of the institution of the action. Other dates on which said acts were found to have been practiced by such female inmates were December 11, 1917, and December 22, 1917, which were subsequent to the filing of the petition in the action, said petition having been filed and the action thus commenced on September 24, 1917. Furthermore, the court finds generally that there "was conducted in said building and on said premises what is termed a dance-hall, with two bars and many boxes; that intoxicating liquors were sold in said dance-hall," etc., and then proceeds to find that certain acts of lewdness were practiced therein by the women and the men frequenting the same. We think it is clear that the implication from the findings, when considered, as they must be, in their entirety and by the light of the averments of the complaint, is that a nuisance existed in and on the premises complained of at the time of the commencement of the action, and that thus the proposition was determined by the court.

Counsel for appellants cite the case of *People* v. *Dillman,* 37 Cal. App. 415, [174 Pac. 951], as supporting the obviously sound proposition that, if a nuisance has been suppressed or abated before action to abate it has been commenced and does not exist at the time of the commencement of the action for its suppression, then in that case such action has no foundation for its support, inasmuch as there would be no nuisance in existence to abate. But in the Dillman case it was also said: "If there had been evidence sufficient to support a finding that the nuisance had been abated before this action was commenced, we doubt not that the court below would have dismissed the proceeding or found against the averments of the petition." In the present case there is no evidence to which our attention has been called or which has, on reading the transcript, arrested our attention, that the nuisance complained of had been abated at the time of the commencement of the action. To the contrary, there is some evidence in the record tending to show that there was no ellipsis in the maintenance of the nuisance at and on the premises from the time that acts of lewdness were shown to have been practiced there before the filing of the petition for the abatement of the nuisance to a day or two prior to the day on which the trial of the action was begun.

The legal propriety of certain rulings of the court interdicting the cross-examination of certain witnesses for the plaintiff with regard to the question of their interest in the case in behalf of the plaintiff, and allowing testimony as to the general reputation of the premises complained of, is challenged and said rulings denounced as having been prejudical in their effect upon the rights of the appellants. Of these, the first called to our attention involves a refusal by the court to allow the appellants to ask several witnesses, on cross-examination, how much they were paid for their services by the organization known as the "State Enforcement and Protective League," by which they had previously testified that they were employed as detectives or agents to secure proof against places in which prostitution or assignation or lewdness, or all of these acts, were habitually carried on, and that they were fully paid for their services in prosecuting that work. Each of said witnesses was asked that question, to which the court sustained the objection interposed in each instance by the district attorney.

[3] It has been held that it is proper cross-examination, as affecting the credibility of the testimony of a witness who, as a detective, has procured evidence and testified against a person charged with crime, to ask such witness how much compensation he is paid for his services as such detective, even after he has testified that he has been fully paid for such services. (*People* v. *Loris,* 131 N. Y. App. Div. 127, [115 N. Y. Supp. 236]; *State* v. *Carroll,* 85 Iowa, 1, [51 N. W. 1159]; *State* v. *Tosney,* 26 Minn. 262, [3 N. W. 345].) The reason of the rule is given in the first case above named and is that such a cross-examination might disclose an inordinate eagerness, motivated by a desire to retain a highly paid employment, to show how successful the detective has been in working up a case against the accused, "and the time of payment might indicate that, despite the witness, the compensation was contingent upon some successful step in the prosecution of the crime."

We can readily perceive the importance of bringing out, on cross-examination, if thus it can be done, the fact, if it be a fact, that a detective employed to procure evidence in a case is to be paid for his services as such only upon the contingency that the result of the trial is favorable to the side by which he is so employed, but we cannot perceive

how the amount of his compensation, where not contingent or to be paid only upon his success in procuring evidence sufficient to gain a victory of the issue for his side, can be of any special consequence as affecting his credibility as a witness, since it may well be assumed that, where he is not shown to be otherwise personally interested in the case, he is receiving or to receive compensation for his services. Indeed, in this case, the detectives who testified for the petitioner stated, as seen, that they were compensated for their services, and this consideration could just as effectually have been pressed upon the court as revealing an interest in the case as against the appellants which alone should be regarded as of a character to effect, according as the trier of the facts might view it, the credibility of the detectives as witnesses as if the precise amount of their compensation had been shown, which fact is all that the question disallowed as cross-examination called for. But, while we think it would have been the proper course to allow that question to be answered and further to permit the cross-examination to be extended to an inquiry as to whether the compensation of the detectives for their services in procuring evidence sufficient to establish a case against the appellants was contingent upon their success in that behalf, still we are not convinced that we would be justified in holding that the errors involved in the disallowance of the cross-examination referred to were prejudical, or, in view of a consideration of the entire record, operated to produce a miscarriage of justice in the case. The judge who tried the case, for some reason—perhaps from a consideration of the overwhelming evidence directly showing that acts of lewdness were practiced in the building—was undoubtedly of the opinion, as we may assume from his rulings, that what precise compensation the detectives received, or whether their compensation was contingent upon the establishment of a case under the law, would be a matter of no consequence one way or the other in the determination of the ultimate issue in the case, and from all this we may well assume that, if the cross-examination had been allowed and it had thus been developed how much compensation each of the detectives received for his services or that his compensation to some extent was made to depend on whether the premises, as maintained, were sufficiently shown to be

a nuisance to warrant an adjudication to that effect, the result would not have been affected thereby or have been any different from what it was as indicated by the decree. But, at all events, the evidence seems to show conclusively that acts of lewdness—such as the exposure of their nether limbs to males by the female inmates and the general use of obscene language and the solicitation, addressed by the women to the male frequenters of the place, and expressed in the most vulgar words conceivable, to indulge with them in sexual acts for money—were habitually practiced in the place. Therefore, as before stated, we think it is very clear that no miscarriage of justice resulted from the errors complained of in the rulings disallowing the cross-examination referred to. (Const., art. VI, sec. 4½.)

[4] The next point urged is that witnesses who were nonresidents of the county of Sacramento were permitted by the court, over appellants' objections, to testify concerning the general reputation of the premises in question. It is provided in the statute that "evidence of the general reputation of the place shall be admissible for the purpose of proving the existence of said nuisance."

Among the witnesses who were permitted, against objection by the appellants, to testify to the general reputation of the premises were Edwin E. Grant, executive officer of the state law enforcement and protective league, an organization established for the special purpose of seeing that the abatement act is enforced, who once resided in Sacramento for a brief period, and who had since frequently visited said city; Harold F. Gray, state health officer of the northern district of the state board of health, residing at Chico, but who had visited Sacramento several times during each of the several preceding years; S. J. Holsinger, secretary of the church federation of Sacramento, who testified that he had resided in Sacramento for the period of one month previously to the trial.

The objection here urged to the testimony of these witnesses is that "general reputation," being what people in a community commonly say about a thing existing or a person residing in such community, the witnesses named, since they were not residents of the city of Sacramento but made only sporadic visits thereto, were not competent to

give testimony relative to the general reputation of the premises in question. As supporting this objection counsel for appellants cite the case of *Tingley* v. *Times-Mirror*, 151 Cal. 1, 27, [89 Pac. 1097], and certain cases referred to in the opinion therein. The testimony excluded by the trial court in that case was in the form of a deposition by a party who had gone to the city of Boston for the express purpose of investigating the character and standing in that city, where she once resided, of the plaintiff, the witness making the deposition having gone to Boston for the purpose stated "with a special bias," as the court said, against plaintiff. Upholding the action of the trial court in refusing to receive the deposition and permit it to be read in evidence in the case, the supreme court said: "As general reputation consists of the estimation in which one is held in the community in which he resides, it can only properly and safely be testified to by a member of the community; it is the opinion of a member of a community as to the estimation in which another who moves in it is generally held by that community. Such member has the means of knowing what that general reputation is and can properly speak of it. It would be extremely dangerous to enlarge the rule so as to permit a stranger to a community, entering into it with special bias against another (as this Boston witness showed he was against plaintiff), to testify as to his opinion of the reputation of that other, based upon an interview with a limited number of persons in the community, possibly equally as prejudiced as himself. Under such circumstances it could not be said that he was testifying from his knowledge of the general reputation of the party, or that he was expressing his own opinion on the subject. He would be but stating his conclusion from the statements of others, derived from specific inquiry—a conclusion which would amount to but hearsay evidence at most. (*State* v. *Forshner*, 43 N. H. 89, [80 Am. Dec. 134]; *Douglass* v. *Toussey*, 2 Wend. 352, [20 Am. Dec. 616].)"

No just adverse criticism of the rule as it is above stated can be suggested; and, while we are not prepared now to say that what is said in the above extract from the case named applies with all its force to testimony of the general reputation of a building as a place where acts of lewdness

are customarily practiced, we are prepared to say that the testimony as to that matter was wholly unnecessary in this case, if the court below, as we may assume that it did, attached full credit to the other testimony directly showing that such acts were, and had been for some time prior to and down to the time of the commencement of this action, customarily practiced in the building, for, as before declared, the direct testimony referred to is amply sufficient to support the findings and the decree. And it is for this reason that we are precluded from holding that the error, if it was error, in admitting the testimony of the general reputation of the building as maintained by the appellants was prejudical in its effect upon the rights of appellants or resulted in a miscarriage of justice.

There are some other assignments involving the claim that prejudical error was committed by certain rulings bearing upon certain evidence, but those, even if the assignments are well made, we regard as of such minor consequence as to justify us in concluding that they could not have affected or changed the result arrived at by the trial court upon the ample direct evidence showing or strongly tending to show that in the building involved herein acts of lewdness were habitually committed by both the female and male frequenters of the place.

We may well conclude this opinion by calling attention to the fact that we have before taken occasion to say that it is no part of the duty of a prosecuting officer to establish a case, either criminal or one arising under the "Red-light Abatement Act," by means of improper testimony (*People v. Dillman, supra*), and that in a case of either kind there should be no desire to accomplish a victory for the people unless there is available to the prosecutor sufficient competent testimony to justify a conviction or a judgment. The purposes of the abatement act, laudable though they be, have in no way changed the general and elementary rules of evidence by which disputed questions of fact are to be determined in courts of justice, and we can conceive of no reason why they should be departed from in the proof of a case under said act. Indeed, since the statute authorizes the court in a case of this character to deprive, by its decree, the owner of a building of which complaint is made under said

statute of its use for any purpose for the period of one year from the date of the decree, and further likewise authorizes the confiscation of the personal property used in the building, it is eminently proper that the trial of such an action should, if anything, be prosecuted with greater care and consideration of the rights of such owner or owners than is the ordinary civil case.

The foregoing suggestions are prompted by the conviction, crystallized from an examination of records on appeal in many of the cases prosecuted under the abatement act which have come to this court on appeal, that there appears to be a disposition to sustain the complaints therein by means of incompetent as well as competent evidence, and we are constrained to say that the record before us justifies us in declaring that this case does not appear to be altogether free from this criticism.

However, for the reasons herein given, the judgment appealed from is affirmed.

Ellison, P. J., *pro tem.*, and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 29, 1920.

All the Justices concurred, except Shaw, J., and Wilbur, J., who were absent.