[No. D035249. Fourth Dist., Div. One. Sept. 11, 2000.]

THE PEOPLE ex rel. CASEY GWINN, as City Attorney, etc., Plaintiff and Respondent, v.
SHIRISH KOTHARI et al., Defendants and Appellants.

---

---

## COUNSEL

Frantz & Geraci, Alan L. Geraci and Giles Townsend for Defendants and Appellants.

Casey Gwinn, City Attorney, Susan M. Heath, Assistant City Attorney, Makini M. Hammond and Kenneth R. So, Deputy City Attorneys, for Plaintiff and Respondent.

## OPINION

**HALLER, J.**—After the City of San Diego (City) filed a public nuisance abatement action against La Cresta Motel owners Shirish Kothari, Mrudula Kothari, Deval Patel and Mahendra Patel (collectively, Owners), the parties stipulated to the terms of a permanent injunction against Owners. The sole issue at trial was whether the injunction would be binding on all future owners of the property. The trial court ruled the terms of the stipulated injunction are binding on all future owners, including bona fide purchasers, except for those terms exempted by the parties by stipulation.

Owners appeal. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 1998, City filed a complaint against Owners under the Red Light Abatement Law (Pen. Code, §§ 11225-11235), the drug abatement act (Health & Saf. Code, §§ 11570-11587) and the unfair competition law (Bus. & Prof. Code, §§ 17200-17209), claiming the motel was a public nuisance and seeking, among other things, injunctive relief to stop prostitution, drug sales and unfair and unlawful business activities on the premises.

On October 13, 1998, the court granted a temporary restraining order that:

— Enjoined Owners from permitting drug sales at the motel and specifically ordered Owners not to rent motel rooms to anyone known to Owners to have been arrested or identified by police as having been arrested for narcotic violations during their tenancy;

— Enjoined Owners from permitting acts of lewdness, prostitution, or solicitation at the motel and specifically ordered Owners not to rent motel rooms to anyone known to have been arrested for prostitution activity or identified by police as having been arrested for prostitution;

— Enjoined Owners from permitting acts constituting unfair or unlawful business practices at the motel and specifically ordered Owners to cease and desist from (1) demanding and/or taking any form of payment from persons using any motel rooms to engage in prostitution or narcotic activities; and (2) forging, doctoring, or in any way altering the motel's guest registration logs or providing false information on the logs; and

— Ordered Owners to not engage in, allow, or maintain any criminal activity on motel property.

On November 13, 1998, the court granted a preliminary injunction that incorporated the terms of the temporary restraining order and additionally required Owners to

— Direct their drive-by security guard to check in with the on-site manager and conduct foot patrols of the premises seven days a week, including at least four random patrols between 6:00 p.m. and 6:00 a.m.;

— Institute recognized and accepted motel management practices as to all prospective guests;[1]

— Post and maintain no trespassing signs and cooperate with police in maintaining legible abatement signs posted on the property;

— Cooperate with police pursuant to San Diego Municipal Code section 52.9103 in identifying motel guests who are on probation, parole, or have Fourth Amendment waivers or outstanding warrants, and, when warranted under the law, provide officers with access to these guests' motel rooms;

— Obtain proper photographic identification from guests, have motel employees fill out guest registration logs with the proper information; and

— Immediately report any suspected illegal narcotic or other criminal activity to the police department.

The preliminary injunction also ordered Shirish Kothari to acquire a minimum of 160 hours of motel/hotel management training from a certified training or instruction institution.

---

[1]These practices are: (1) require all motel guests to sign the desk register upon registering for a motel room; (2) provide a list of guests to the police department upon request; (3) permit police to enter the office to inspect the guest register to ascertain the name and resident status of all persons in the residence or on the premises on a daily basis; (4) require legitimate identification (Department of Motor Vehicle picture identification) of guests upon check-in and registration; (5) not allow unregistered guests or visitors on property between 10:00 p.m. and 6:00 a.m.; (6) lock and secure vacant rooms and laundry rooms; (7) prohibit loitering in any common areas of the premises, including hallways, alleyways, carports, driveways, entrances and exits, laundry rooms, and the roof; (8) prohibit anyone known to be engaged in criminal activity of any kind from residing at the motel and where necessary, evict or remove all guests and visitors involved in criminal activity or contributing to the nuisances; (9) maintain high-intensity lighting throughout the interior and exterior of buildings; and (10) post and maintain in visible and conspicuous locations signs indicating "No Trespassing," "No Drugs," "No Drug Dealers," "No Loitering," "No Weapons," and "No Drinking Of Alcoholic Beverages."

Through October 1999, the parties attempted to negotiate the terms of a stipulated permanent injunction that would be entered as a judgment under Code of Civil Procedure section 664.6, but could not agree on one provision—namely, whether all future owners of the property would be bound by all the terms of the injunction in perpetuity.

The parties agreed the permanent injunction would enjoin Owners, "their assigns, successors in interest and any of their agents, employees, representatives and all persons, corporations or other entities acting by, through, under or on behalf of the Defendants and all persons acting in concert with or participating with Defendants with actual or constructive knowledge of this injunction" from using or permitting the use of the premises for drug sales and prostitution or solicitation, engaging in or permitting the occurrence of unfair or unlawful business practices on the premises, and maintaining, causing or permitting the existence of a general public nuisance on the premises. The stipulated permanent injunction included refinements in Owners' duties listed in the preliminary injunction with respect to using security patrols, posting abatement signs and cooperating with police, and also required Owners to hire a motel management consultant to devise a business plan, have their motel managers attend an approved landlord-tenant course, and not make available hard-core pornographic movies to guests.

The negotiated proposed judgment also provided that Owners were to pay $15,000 in costs to the city attorney's office, with an additional $35,000 in attorney fees and investigations costs suspended for the duration of the permanent injunction, as long as Owners abided by all terms of the final judgment.

Other provisions of the parties' proposed stipulation for entry of judgment provided: "A copy of the permanent injunction shall be filed in the Office of the County Recorder"; and "[R]ecordation of an abstract of judgment in this case constitutes a permanent injunction that runs with the property as well as a monetary judgment lien on the property for $15,000 until said amount is paid in full." The penultimate provision specified that certain affirmative terms, such as security patrols, "will not bind any bona fide purchaser, assigns, or successors in interest provided that the sale or transfer of ownership of the property is pursuant to a genuine arm's length transaction and that the Defendants are in no way involved in the financial or business operation of the property. However, all the remaining provisions contained in this Stipulated Final Judgment shall apply to and bind any and all assigns and successors in interest to the property."

In November 1999, Owners asked the court to sever the issues at trial and initially to determine whether the stipulated injunction would bind all future owners.

The court ruled that the terms of the stipulated injunction dealing with prostitution and controlled substances are binding on all "assigns and successors in interest to the property having notice" except as otherwise provided in the stipulated injunction.

## DISCUSSION

■■■ Owners contend the trial court erred in ruling the stipulated injunction is binding on all future owners. We agree.

The court's ruling, effectively making the stipulated injunction run with the land, treats the injunction as though it were an in rem remedy. This is contrary to law. An in rem action or proceeding is one which seeks to affect the interests of all persons ("all the world") in a particular property or thing. (2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 234, p. 794.) However, an injunction—a writ or order requiring a person to refrain from a particular act or to do a particular act (Code Civ. Proc., § 525)—is an in personam remedy. (*Berger v. Superior Court* (1917) 175 Cal. 719, 721 [167 P. 143, 15 A.L.R. 373].) " 'An injunction is obviously a personal decree. It operates on the person of the defendant by commanding him to do or desist from certain action.' " (*Comfort v. Comfort* (1941) 17 Cal.2d 736, 741 [112 P.2d 259].)

It is well established that injunctions are not effective against the world at large. (*Regal Knitwear Co. v. Board* (1945) 324 U.S. 9, 13 [65 S.Ct. 478, 480-481, 89 L.Ed. 661]; *Berger v. Superior Court, supra,* 175 Cal. at p. 722; *Planned Parenthood Shasta-Diablo, Inc. v. Williams* (1994) 7 Cal.4th 860, 870 [30 Cal.Rptr.2d 629, 873 P.2d 1224] ["A restriction that enjoined all picketers in addition to petitioners would clearly have been overbroad"].)

An injunction sought under the specialized public nuisance abatement laws is no different.

Since its inception in 1913, the Red Light Abatement Law (Pen. Code, § 11225 et seq.) provides for, among other things, injunctions to abate nuisances on premises where prostitution takes place. Of more recent vintage, the drug abatement act (Health & Saf. Code, § 11570 et seq.) provides for injunctions to abate nuisances on premises where controlled substances are manufactured, kept and sold. These specialized statutes prescribe remedies not available under the general nuisance statutes.[2] (*People ex rel. Busch v. Projection Room Theater* (1976) 17 Cal.3d 42, 60 [130 Cal.Rptr. 328, 550 P.2d 600].) While some of the remedies under these abatement laws are of

---

[2]See Civil Code sections 3480 and 3491 and Penal Code sections 370, 372 and 373a.

an in rem character—for example, closure—those providing injunctive relief are not. (*People ex rel. Van de Kamp v. American Art Enterprises, Inc.* (1983) 33 Cal.3d 328, 333, fn. 9 [188 Cal.Rptr. 740, 656 P.2d 1170]; see also *People v. Casa Co.* (1917) 35 Cal.App. 194, 196 [169 P. 454] ["The act does not undertake to provide for a judgment enforcing and insuring abatement of the nuisance otherwise than as against persons who are properly joined as defendants in the action and brought in by proper process and afforded an opportunity to be heard, and thus the constitutional requirement of due process is fully complied with"].)

Thus, we conclude the court erred in ruling that the stipulated injunction is binding on bona fide purchasers. The terms of the stipulated injunction, including those dealing with prostitution and drug sales activities, are not in rem in character and do not run with the land. These terms, requiring Owners *to do certain things and refrain from doing others*, are aimed at eliminating the activities that make the property a nuisance. That is in keeping with the primary goal of the public nuisance abatement acts—"to 'reform' the property and insure that the nuisance is abated." (*People ex rel. Van de Kamp v. American Art Enterprises, Inc., supra,* 33 Cal.3d at p. 333.)[3] It follows that a public nuisance abatement injunction is binding only on those whose actions are responsible for the nuisance; injunctions "may work to deprive the enjoined parties of rights others enjoy precisely because the enjoined parties have abused those rights in the past." (*People v. Conrad* (1997) 55 Cal.App.4th 896, 902 [64 Cal.Rptr.2d 248], fn. omitted.)

Of course, the terms of the stipulated injunction are binding on those who are agents of Owners or those who act in concert with Owners and have notice. ■ "[I]t has been a common practice to make the injunction run also to classes of persons through whom the enjoined party may act, such as agents, servants, employees, aiders, abetters, etc., though not parties to the action, and this practice has always been upheld by the courts, and any of such parties violating its terms with notice thereof are held guilty of contempt for disobedience of the judgment. But the whole effect of this is simply to make the injunction effectual against all through whom the *enjoined party* may act, and to prevent the prohibited action by persons acting in concert with or in support of the claim of the *enjoined party*, who are in fact *his* aiders and abetters. As we have said, this practice is thoroughly settled and approved by the courts, and there is a fair foundation for

---

[3]For example, the Red Light Abatement Law cases hold the action should be dismissed when a nuisance has been voluntarily abated in good faith before the complaint was filed. (See *People v. Goddard* (1920) 47 Cal.App. 730, 740 [191 P. 1012]; *People v. Burch* (1920) 46 Cal.App. 391, 395 [189 P. 716]; *People v. Dillman* (1918) 37 Cal.App. 415, 419 [174 P. 951].)

a conclusion that persons so co-operating with the enjoined party are guilty of a disobedience of the injunction." (*Berger v. Superior Court, supra*, 175 Cal. at p. 721, italics in original.) Put another way, enjoined parties may not play jurisdictional shell games; they may not nullify an injunctive decree by carrying out prohibited acts with or through nonparties to the original proceeding. (*Regal Knitwear Co. v. Board, supra*, 324 U.S. at p. 14 [65 S.Ct. at p. 481].)

At issue chiefly is the statutory language of Penal Code section 11226, which provides: "Whenever there is reason to believe that a nuisance as defined in this article is kept, maintained or is in existence in any county, the district attorney, in the name of the people of the State of California, shall, or the city attorney of an incorporated city . . . within the county, in his or her own name may, maintain an action in equity to abate and prevent the nuisance and to *perpetually* enjoin the person conducting or maintaining it, and the owner, lessee or agent of the building, or place, in or upon which the nuisance exists, from directly or indirectly maintaining or permitting it" (italics added),[4] and Penal Code section 11234, which reads: " 'Person' as used in this article means individuals, corporations, associations, partnerships, limited liability companies, trustees, lessees, agents and *assignees*." (Italics added.)[5]

City claims the italicized words indicate legislative intent that an injunction issued under the Red Light Abatement Law is binding on all successors in interest, including bona fide purchasers. City is mistaken.

 We reiterate certain well-established rules of statutory interpretation. A court's overriding purpose in construing a statute is to ascertain legislative intent and to give the statute a reasonable construction conforming to that intent. (*People v. Thomas* (1992) 4 Cal.4th 206, 210 [14 Cal.Rptr.2d 174, 841 P.2d 159].) In interpreting a statute to determine legislative intent, a court looks first to the words of the statute. (*People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) "But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences

---

[4]The corresponding section in the drug abatement act (Health & Saf. Code, § 11571) contains virtually identical language.

[5]The drug abatement act (Health & Saf. Code, § 11570 et seq.) does not contain a corresponding section; however, the drug abatement act is part of the California Uniform Controlled Substances Act (Health & Saf. Code, § 11000 et seq.), which defines "person" as "individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership, limited liability company, or association, or any other legal entity." (Health & Saf. Code, § 11022.) This definition governs the construction of the drug abatement act. (Health & Saf. Code, § 11001.)

which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.]" (*Id.* at pp. 898-899.)

■ The plain language in Penal Code section 11226 mandating and authorizing an equitable action "to perpetually enjoin the person conducting or maintaining [the nuisance], and the owner, lessee or agent of the building, or place . . . indirectly maintaining or permitting it" talks of two groups that are to be enjoined. The first group consists of "the person conducting or maintaining [the nuisance]"—the operators of the nuisance. The second group is comprised of "the owner, lessee or agent of the building, or place . . . indirectly maintaining . . . it"—those who have ownership or tenancy rights in the property. Any other construction would ignore the comma separating the two groups. ■ "Commas are used to separate items in a list. (Random House, Dict. of the English Usage, Unabridged Ed. (1966) p. 295.) Their presence or absence in a statute is a factor to be considered in its interpretation. [Citation.]" (*Board of Trustees v. Judge* (1975) 50 Cal.App.3d 920, 928, fn. 4 [123 Cal.Rptr. 830]; see also *Duncanson-Harrelson Co. v. Travelers Indemnity Co.* (1962) 209 Cal.App.2d 62, 66 [25 Cal.Rptr. 718].)

■ Penal Code section 11234 includes "assignees" in the definition of the word "person," which is used in Penal Code section 11226 only to describe the operators of the nuisance, not those who have an ownership interest. Thus, when read in conjunction with each other, Penal Code sections 11226 and 11234 explicitly provide all "assignees" or successors in interest of those "conducting or maintaining" the nuisance are to be "perpetually enjoin[ed]." The two statutes do not, by their plain language, make injunctive relief under the Red Light Abatement Law binding on "assignees" of those with ownership interests in the property who are not operators of the nuisance. Thus, the statutes do not make Red Light Abatement Law injunctions binding on bona fide arm's-length purchasers. Nor can we imply a legislative intent to do so. An intention to legislate by implication is not to be presumed. (*Krater v. City of Los Angeles* (1982) 130 Cal.App.3d 839, 845 [181 Cal.Rptr. 923].) In construing a statute, we do not insert words into it as this would "violate the cardinal rule that courts may not add provisions to a statute. [Citations.]" (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 827 [4 Cal.Rptr.2d 615, 823 P.2d 1216].)

In interpreting the phrase "to perpetually enjoin," we are mindful of the canon to avoid absurd results and conclude the only sensible construction is that the Legislature was providing for permanent injunctions as to those who are enjoined. If we were to adopt the "never ceasing" definition of "perpetual" advanced by City, we would transform such injunctions into in rem remedies that run with the land, which is contrary to the law.

The problem with City's construction is that it purports to include within the sweep of a Red Light Abatement Law injunction some who are not subject to it. As indicated above, an injunction is binding only on the parties to an action or those acting in concert with them, and an arm's-length bona fide purchaser is not in this group. ■ "The courts . . . may not grant an . . . injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." (*Regal Knitwear Co. v. Board, supra*, 324 U.S. at p. 13 [65 S.Ct. at p. 481].) ■ We must presume the Legislature intended to enact a legally sound statute, and, therefore, we reject City's construction.

An examination of the predecessor to Penal Code section 11225 et seq. also supports our interpretation.

In 1913, the Legislature enacted "An act declaring all buildings and places nuisances wherein or upon which acts of lewdness, assignation or prostitution are held or occur or which are used for such purposes, and providing for the abatement and prevention of such nuisances by injunction and otherwise." (Stats. 1913, ch. 17, p. 20, italics omitted.) In 1953, the Legislature codified the Red Light Abatement Law in Penal Code section 11225 et seq. with little change from the language in the 1913 act. (Stats. 1953, ch. 35, § 1, pp. 647-649.)[6]

Courts repeatedly construed the injunctive relief provided by the 1913 act as in personam in nature. (See, e.g., *People v. Barbiere* (1917) 33 Cal.App. 770, 778-779 [166 P. 812]; *People v. Casa Co., supra*, 35 Cal.App. at p. 196.) ■ Because the Legislature is deemed to have acted with knowledge of existing statutes and judicial decisions, when the Legislature enacts a statute with identical or substantially similar language to a statute on a related subject, there is a presumption the lawmakers intended the newer statute to have the same construction as that given to the earlier enacted and judicially construed statute. (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155].)

■ Nor can an injunction issued under the drug abatement act, which does not contain the word "assignees," be binding on bona fide purchasers.

---

[6]The 1913 act's counterpart to Penal Code section 11226 was section 3, which read: "Whenever there is reason to believe that such nuisance is kept, maintained or exists in any county or city and county, the district attorney of said county or city and county, in the name of the people of the State of California, must . . . maintain an action in equity to abate and prevent such nuisance and to perpetually enjoin the person *or persons* conducting or maintaining the same, and the owner, lessee or agent of the building, or place, in or upon which such nuisance exists, from directly or indirectly maintaining or permitting such nuisance." (Stats. 1913, ch. 17, § 3, pp. 20-21, italics added.)

Both the 1913 act (Stats. 1913, ch. 17, § 1, p. 20) and the codified version (Pen. Code, § 11234) include "assignees" in the definition of "person."

(See fn. 5, *ante*.) City's argument to the contrary is based on a theory of implication—"it is implicit in the Drug Abatement Act that the statute was intended to enjoin assigns much like the Red Light Abatement Act." However, we are not permitted to rewrite the Drug Abatement Act to conform to an assumed intent that does not appear from its plain language. (*Napa Valley Wine Train, Inc. v. Public Utilities Com.* (1990) 50 Cal.3d 370, 381 [267 Cal.Rptr. 569, 787 P.2d 976].) Moreover, we have already construed Penal Code sections 11226 and 11234 and concluded they do not bind bona fide purchasers; hence, any reference—explicit or implicit—to "assignees" in the drug abatement act would not bind bona fide purchasers. Additionally, it is significant that in enacting the Uniformed Controlled Substances Act and providing for injunctive relief under the drug abatement act, the Legislature used the same language in Health and Safety Code section 11571 as it used in Penal Code section 11226, but did not include "assignees" in its definition of "person" for Health and Safety Code section 11571. (Stats. 1972, ch. 1407, § 3, pp. 2989, 3034-3036; see also fn. 5, *ante*.) ▇ If the Legislature has included one provision in one part of a statute but excluded it from another, a court should not imply the omitted provision in the part of the statute that does not contain it. (*People v. Gardeley* (1996) 14 Cal.4th 605, 621-622 [59 Cal.Rptr.2d 356, 927 P.2d 713].)

▇ In any event, it very well may be that the word "assignees" in Penal Code section 11234 has little import.[7] In *Regal Knitwear Co. v. Board, supra,* 324 U.S. at pages 13-16 [65 S.Ct. at pages 480-482], the United States Supreme Court found the term "successors and assigns" in a National Labor Relations Board cease and desist order is in effect boilerplate surplusage, signifying nothing. The same effectively could apply here. An injunction issued under the Red Light Abatement Law applies to all "instrumentalities through which [the] defendant seeks to evade an order or . . . persons in active concert or participation with them in the violation of an injunction." (*Id.* at p. 14 [65 S.Ct. at p. 481].) They are not so much bound by the word "assignees" in Penal Code section 11234, but most definitely by well-established principles of law. (324 U.S. at p. 14 [65 S.Ct. at p. 481].) The conduct of the successor or assignee is the determinative factor, not the title of the actor. If a successor or assign acts in concert with a defendant, then an injunction applies.

The trial court relied on *Gale v. Tuolumne County Water Co.* (1914) 169 Cal. 46, 51 [145 P. 532], a riparian rights case, in ruling the stipulated injunction is binding on all successors in interest with notice. The original

---

[7]We note that the rule directing courts to avoid interpretations that render part of a statute as surplusage is a "mere guide[] and will not be used to defeat legislative intent." (*People v. Cruz* (1996) 13 Cal.4th 764, 782 [55 Cal.Rptr.2d 117, 919 P.2d 731].)

judgment in *Gale v. Tuolomne County Water Co.*, *supra*, 169 Cal. 46, adjudicated title to creek waters for all time; the case was entirely in rem and the obligations and rights ran with the land. Thus, each successive owner of the creek and its adjacent lands took title to the same rights and obligations merely by virtue of owning those permanent physical features of the land. The abatement action here was partly in rem and partly in personam. (*People ex rel. Van de Kamp v. American Art Enterprises, Inc.*, *supra*, 33 Cal.3d at p. 333, fn. 9.) The obligations of Owners under the stipulated permanent injunction were not of an in rem character.

## DISPOSITION

Reversed and remanded to the trial court with directions to issue an order consistent with the views expressed in this opinion.

Owners to recover costs on appeal.

Huffman, Acting P. J., and McIntyre, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 13, 2000.