Filed 6/22/21  Rudisill v. California Coastal Commission CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ROBIN RUDISILL et al., | B299331 |
| Plaintiffs, Respondents, and Cross-appellants, | (Los Angeles County Super. Ct. No. BS168074) |
| v. | |
| CALIFORNIA COASTAL COMMISSION, | |
| Defendant, | |
| LIGHTHOUSE BROOKS, LLC et al., | |
| Real Parties in Interest, Appellants, and Cross-respondents. | |
| CITY OF LOS ANGELES, | |
| Real Party in Interest and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Reversed in part, affirmed in part.

Gaines & Stacey, Fred Gaines, and Lisa A. Weinberg for Real Parties in Interest, Appellants, and Cross-respondents Lighthouse Brooks, LLC and Ramin Kolahi.

Michael N. Feuer, City Attorney, Terry P. Kaufmann-Macias, Assistant City Attorney, Amy Brothers and Oscar Medellin, Deputy City Attorneys, for Real Party in Interest and Appellant City of Los Angeles.

Venskus & Associates and Sabrina Venskus for Plaintiffs, Respondents, and Cross-appellants.

———————————————

## INTRODUCTION

This appeal arises out of the construction by Lighthouse Brooks, LLC and Ramin Kolahi (collectively, Lighthouse) of four homes in Venice (the Project).  Lighthouse obtained a coastal development permit from the California Coastal Commission after Lighthouse had substantially completed the Project.  Robin Rudisill and Jenni Hawk, two Venice residents who opposed the Project, filed a petition for a writ of administrative mandate.  The trial court granted the petition and directed the Commission to set aside the permit and reconsider whether the Project complied with the Coastal Act.  The court also stayed "the Project."  The Commission and Lighthouse appealed, and we reversed the judgment and directed the trial court to deny the petition for writ of mandate.  (See *Rudisill v. California Coastal Com.* (Dec. 9, 2020, B294460) [nonpub. opn.] (*Rudisill I*).)

2

While the appeal was pending, Lighthouse took certain steps to enable residents to occupy the homes, including requesting and obtaining certificates of occupancy from the City of Los Angeles. The trial court granted a request by Rudisill and Hawk to sanction Lighthouse under Code of Civil Procedure section 177.5 for violating the stay.[1] The court also ordered the City, which at that point was no longer a party to the case, to revoke the certificates of occupancy. Finally, the court denied a motion by Rudisill and Hawk for attorneys' fees.

All of the parties appealed: Lighthouse Brooks, LLC and Kolahi from the order sanctioning each of them $1,500; the City from the order requiring it to revoke the permits; Rudisill and Hawk from an order denying their motion for attorneys' fees. We reverse the first two orders and affirm the third.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Trial Court Grants a Petition by Rudisill and Hawk for Writ of Administrative Mandate*

The facts concerning the Project and the petition for writ of administrative mandate are discussed in more detail in our prior opinion. (See *Rudisill I*, *supra*, B294460.) To summarize, the Project is in the coastal zone, as defined by the Coastal Act. (See Pub. Resources Code, § 30103.) In October 2013 the City issued a coastal development permit for Lighthouse to build the Project, but failed to send notice of the permit to the Commission, as

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

required by the Coastal Act.[2]  Lighthouse completed most of the Project between 2013 and 2016.  In August 2016 the Commission learned about the Project and informed the City it never received notice the City had issued a permit for the Project, which prompted the City to belatedly send notice of the permit it had issued to Lighthouse three years earlier.  Rudisill, Hawk, and several other Venice residents filed an appeal with the Commission challenging the City's decision to issue the permit.[3]  After a public hearing the Commission issued a permit for the Project with certain modifications.  (See *Rudisill I*, *supra*, B294460.)

Rudisill and Hawk filed a petition for writ of administrative mandate arguing, among other things, the Commission improperly issued the permit without determining whether the Project complied with the Coastal Act.  In November 2018 the trial court granted the petition and issued a writ of mandate directing the Commission to set aside the permit and reconsider whether the Project complied with the Coastal Act.

---

[2]  Generally, any person "wishing to perform or undertake any development in the coastal zone . . . shall obtain a coastal development permit."  (Pub. Resources Code, § 30600, subd. (a).)  Where a local government issues a coastal development permit "prior to certification of its local coastal program" by the Commission, the local government "shall within five working days notify the commission . . . ."  (*Id.*, § 30620.5, subd. (c).)  The Commission has not certified a complete local coastal program for the City of Los Angeles.

[3]  "Prior to certification of its local coastal program, any action taken by a local government on a coastal development permit application may be appealed . . . to the commission."  (Pub. Resources Code, § 30602.)

4

The court also ordered that the Project was "stayed pursuant to Section 30623 of the Coastal Act."  In December 2020 we reversed the judgment and directed the court to deny the petition.  (See *Rudisill I*, *supra*, B294460.)

B.  *Rudisill and Hawk Seek Sanctions Against Lighthouse for Violating the Stay*

In February 2019, while the appeal was pending, Rudisill and Hawk observed some activity at the Project and discovered that in January 2019 the City had issued certificates of occupancy for three of the four homes.  Rudisill and Hawk filed an application for an order to show cause why the court should not sanction Lighthouse under section 177.5 for violating the stay.  The trial court granted the application, set the matter for a hearing, and ordered the City to appear.  After discussing the scope of the stay with the parties at the hearing, the court entered an order stating that "the project is enjoined, except for use of the property," and that "no further permits for the property shall be issued."

In response to the order to show cause, Lighthouse contended the only construction at the Project was a series of "cosmetic changes" to the interior of one of the homes by a tenant, not by Lighthouse.  In their reply, Rudisill and Hawk submitted additional information they claimed demonstrated Lighthouse violated the stay, including that Lighthouse submitted a permit application related to the homes in December 2018 and that Lighthouse performed corrective work between December 2018 and January 2019 to obtain a certificate of occupancy for one of the homes.  Rudisill and Hawk also contended Lighthouse violated the trial court's February 2019 order clarifying the scope

5

of the stay because, later on the same day the court entered the clarification order, the City issued the certificate of occupancy for that home. In addition to seeking monetary sanctions under section 177.5, Rudisill and Hawk filed a motion for attorneys' fees under section 575.2, the statute governing failure to comply with local rules, and the private attorney general doctrine articulated in *Serrano v. Priest* (1977) 20 Cal.3d 25, seeking over $141,000 in attorneys' fees.

In a surreply Lighthouse explained that the December 2018 permit application was for an awning Lighthouse had installed on one of the residential units before the trial court issued the writ of mandate. Lighthouse explained the corrective work included removing a temporary power pole for the Project that was no longer needed. With respect to the final certificate of occupancy the City issued, Lighthouse stated that it applied for the certificate before the court's February 2019 order, but that the City happened to issue the permit the day the court made the order.

C. *The Trial Court Sanctions Lighthouse, but Denies the Motion by Rudisill and Hawk for Attorneys' Fees*

The parties appeared at the hearing in July 2019, and the City made a special appearance. The trial court sanctioned Lighthouse Brooks, LLC and Kolahi $1,500 each for violating the stay. The court ruled Lighthouse violated the stay by submitting a permit application for the previously installed awning, by removing the temporary power pole and performing corrective work, and by requesting certificates of occupancy from the City. The court also ruled, however, Lighthouse was not responsible for construction performed inside the homes by the tenants. The

6

trial court also found the City acted as Lighthouse's agent when it issued the certificates of occupancy. The court ordered the City to "revoke all Certificates of Occupancy issued for the Project . . . within ten (10) days of the date of entry of this Order."

The court denied the motion by Rudisill and Hawk for attorneys' fees. The court ruled that they were not entitled to fees under section 575.2 because Lighthouse had not violated a local rule and that they were not entitled to fees under the private attorney general doctrine or its codification in section 1021.5 because Lighthouse's violations were "minor" and not "serious in nature" and the request for sanctions did not concern an important right affecting the public interest or confer a significant public benefit. Lighthouse timely appealed, and Rudisill and Hawk cross-appealed.

## DISCUSSION

A. *The Trial Court Erred in Ordering the City To Revoke the Certificates of Occupancy*

The City argues the trial court lacked jurisdiction to order it to revoke the certificates of occupancy because the City was not a party to the action at the time the court made the order. As Rudisill and Hawk appear to concede by not opposing the City's appeal, the court erred in issuing the order against the City.

Generally, "[a] court's power is limited to adjudicating disputes between persons who have been designated as parties or made parties by service of process; it has 'no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant.' . . . [¶] Consistent with this principle, courts have long observed a general rule against entering

7

injunctions against nonparties." (*Hassel v. Bird* (2018) 5 Cal.5th 522, 549 (conc. opn. of Kruger, J.); see *People ex rel. Gwinn v. Kothari* (2000) 83 Cal.App.4th 759, 769 ["an injunction is binding only on the parties to an action or those acting in concert with them"]; see also *Zenith Radio Corp. v. Hazeltine Research, Inc.* (1969) 395 U.S. 100, 110-112 [89 S.Ct. 1562, 23 L.Ed.2d 129] [injunction against a nonparty was improper because "it is elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process"].) "On the other hand, the law recognizes that enjoined parties 'may not nullify an injunctive decree by carrying out prohibited acts with or through nonparties to the original proceeding.'" (*Planned Parenthood Golden Gate v. Garibaldi* (2003) 107 Cal.App.4th 345, 353; see *People v. Conrad* (1997) 55 Cal.App.4th 896, 902.)  Thus, "'it has been a common practice to make the injunction run also to classes of persons through whom the enjoined person may act, such as agents, servants, employees, aiders, abettors, etc., though not parties to the action, and this practice has always been upheld by the courts . . . .'" (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 906; see *Berger v. Superior Court* (1917) 175 Cal. 719, 721.)

Rudisill and Hawk originally named the City as a respondent in their writ petition, but voluntarily dismissed the City before the trial court ruled on the petition.  This left the City as "'a stranger to the action,'" as though the City "'had never been a party.'" (*Deutsche Bank National Trust Co. v. McGurk* (2012) 206 Cal.App.4th 201, 212; accord, *Paniagua v. Orange County Fire Authority* (2007) 149 Cal.App.4th 83, 89.)  Therefore, the trial court did not have jurisdiction to enjoin the City, unless the

8

City was an entity through which Lighthouse, as subject to the injunction, could act.

The trial court seemed to recognize this, finding the City was an agent of Lighthouse.  Substantial evidence, however, did not support that finding.  (See *van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 562 ["[a]gency is generally a question of fact" we review "for substantial evidence"].)  """Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."""  (*Gordon v. ARC Manufacturing, Inc.* (2019) 43 Cal.App.5th 705, 718; see *van't Rood*, at p. 571.)  "'The chief characteristic of the agency is that of representation, the authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties.'"  (*Gordon*, at p. 718; see *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1171.)

There was no evidence the City acted as an agent of Lighthouse.  There was no evidence the City, in issuing the certificates of occupancy, agreed to act on behalf of and subject to the control of Lighthouse or that the City otherwise had authority to act on behalf of Lighthouse.  As the trial court stated at the hearing on the order to show cause, the City "has no dog in this hunt in terms of the certificates of occupancy."  The court found "no fault" on the part of the City, and even recognized the City "is not normally an agent of the real party," but nevertheless concluded the City was an agent of Lighthouse.  That was error.

Moreover, the court issued the injunction against the City to aid the court's order granting the petition by Rudisill and

9

Hawk for writ of mandate.  We reversed that order in *Rudisill I*; there is nothing left for the injunction to aid.

   B. *The Trial Court Erred in Awarding Sanctions Against Lighthouse*

    1. *Applicable Law and Standard of Review*

   Section 177.5 authorizes a court to "impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), . . . payable to the court, for any violation of a lawful court order by a person, done without good cause or substantial justification."  We review a trial court's award of sanctions under section 177.5 for an abuse of discretion.  (See *People v. Kareem A.* (2020) 46 Cal.App.5th 58, 70; *County of Riverside v. Public Employment Relations Bd.* (2016) 246 Cal.App.4th 20, 33.)  "While this standard of review is highly deferential to the trial court's wide discretion in determining the facts, choosing from the array of available sanctions, and deciding the severity of any sanction chosen . . . an abuse of discretion will be found if the findings underlying the order under review are factually unsupported [citation], which requires us to 'assess[ ] the record for substantial evidence to support the court's express or implied findings.'"  (*People v. Landers* (2019) 31 Cal.App.5th 288, 304; see *Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 347 ["We review findings of fact forming the basis of a sanctions award for substantial evidence."].)

## 2. *Lighthouse Acted with Good Cause or Substantial Justification*

Lighthouse argues it acted with substantial justification when it applied for permits and certificates of occupancy for the homes and performed some minor work such as removing a temporary power pole. Lighthouse is correct.

Although the parties do not identify any authority defining "substantial justification" for purposes of section 177.5, courts have generally equated substantial justification with "'a valid excuse.'" (*People v. Kareem A., supra*, 46 Cal.App.5th at p. 78; see *Seykora v. Superior Court* (1991) 232 Cal.App.3d 1075, 1081.) The statutes governing a court's authority to award sanctions for misuse of the discovery process also use the term "substantial justification" (see, e.g., §§ 2023.010, subds. (a), (e) & (h), 2023.030, subd. (a)), and those statutes provide that a position is substantially justified if "'well grounded in both law and fact.'" (*City of Los Angeles v. Superior Court* (2017) 9 Cal.App.5th 272, 291; accord, *Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1269.)

Lighthouse's position—that it did not violate the stay by applying for permits or performing other minor work at the Project—was well-grounded in law and fact, and its conduct was excusable, because the scope of the stay in the court's original judgment was vague. In its November 2018 order the trial court stated the Project was "stayed pursuant to [s]ection 30623 of the Coastal Act," which stays "the operation and effect" of a coastal development permit during the pendency of an appeal from a local government to the Coastal Commission. But because the Project was already built, it was not clear how Lighthouse was supposed to act or what conduct would violate the stay. On the

11

one hand, the court may have intended to prohibit Lighthouse from conducting any activity or using any of the existing structures on the Project.  On the other hand, the November 2018 order only directed the Commission to set aside the coastal development permit so that the Commission could reconsider whether the Project complied with the Coastal Act; the order did not direct the Commission to revoke the permit for the Project.  Thus, the court may have intended only to prohibit Lighthouse from further developing the Project and to maintain the status quo, not to prohibit Lighthouse and others from using the homes Lighthouse had already built.

The vagueness of the November 2018 stay is confirmed by the trial court's statements at the February 2019 hearing and its ruling on the ex parte application for an order to show cause.  At the hearing the court told counsel for Lighthouse the stay "doesn't mean . . . that if you had everything in place you couldn't rent it to a tenant.  You could.  That's not 'the Project.'"  After directing counsel for Rudisill and Hawk and Lighthouse to meet and confer over the language of a revised stay, the court clarified in its February 2019 order that the stay precluded the City from issuing any further permits, but that the stay did not apply to the use of the property.

Because the trial court's November 2018 order was vague, and until the court issued a new order in February 2019 clarifying that the City could not issue any permits while the stay was in effect, Lighthouse was substantially justified in, and had a valid excuse for, applying for the certificates of occupancy and a permit for a previously built awning.  Even if the court had intended to restrict this type of activity in November 2018 when it issued the original stay, it was unclear the stay covered this

12

activity under the circumstances.  (Cf. *City of Los Angeles v. Superior Court*, *supra*, 9 Cal.App.5th at p. 292 [no basis for finding a party acted without substantial justification given "the unsettled nature of the issues presented" and conflicting legal authority]; *Diepenbrock v. Brown* (2012) 208 Cal.App.4th 743, 749 [same].)  Lighthouse was also substantially justified in, and had a valid excuse for, removing a temporary power pole used for construction that was no longer needed—an action that, if anything, complemented a stay on further construction.

Substantial evidence also did not support a finding Lighthouse violated the stay by performing corrective work on the Project.  In response to Lighthouse's request for a final inspection of one of the homes, the City on January 28, 2019 issued corrections to Lighthouse.  A few days later, on February 4, 2019, the City updated the status of the permit for the home to "OK to issue [Certificate of Occupancy]."  The trial court inferred from this that Lighthouse must have performed some corrective work on the home between January 28, 2019 and February 4, 2019.  But even if it were reasonable for the court to infer Lighthouse took some action to cause the City to update the status of the permit (other than removing the power pole),[4] there was no evidence of what other corrective actions Lighthouse took—a fact the court acknowledged at the hearing.  Given the vagueness of the stay, it was speculative for the court to conclude any actions Lighthouse may have taken violated the stay.  (See

---

[4]    Kolahi stated in a declaration the City unilaterally changed the status of the permit, without any request for an inspection by Lighthouse.  The court, however, was not required to find this explanation credible.

13

*Wise v. DLA Piper LLP (US)* (2013) 220 Cal.App.4th 1180, 1188 ["'speculation is not evidence, less still substantial evidence'"].)

Finally, the court found Lighthouse violated the February 2019 order clarifying the scope of the stay by obtaining the final certificate of occupancy shortly after the court issued that order. Whether Lighthouse violated the February 2019 revised stay, as opposed to the November 2018 original stay, is a closer question. The February 2019 order stated that "no further permits . . . shall be issued." Although there was no evidence Lighthouse did anything after the trial court issued the February 2019 stay to cause the City to issue the certificate later in the day of the hearing, Lighthouse did not deny it used the certificate after obtaining it. But this was still not enough to show Lighthouse violated the February 2019 order without substantial justification or a valid excuse. While the February 2019 order stated the City shall not issue any permits, it did not direct Lighthouse to withdraw any pending permit applications or to return any permits it might receive in the interim. And, as discussed, the court stated at the hearing in February 2019 that, if Lighthouse had everything in place, it could rent the units, and the February 2019 order stated Lighthouse could continue to use the property. Although the court may have intended its February 2019 order to prohibit Lighthouse from using permits that it had previously applied for and that the City finally got around to issuing, Lighthouse was substantially justified in receiving the permit based on a pre-stay application and in using the property consistent with the permit.[5]

_____

[5] Because we conclude Rudisill and Hawk failed to prove Lighthouse violated the stay and reverse the trial court's order

14

## DISPOSITION

The order imposing sanctions under section 177.5 is reversed.  The order directing the City to revoke certificates of occupancy for the Project is also reversed.  The order denying the request by Rudisill and Hawk for attorneys' fees is affirmed.  Lighthouse is to recover its costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


McCORMICK, J.*

---

awarding sanctions, we affirm the order denying the motion by Rudisill and Hawk for attorneys' fees.

* Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.