[Civ. No. 4947.   Fourth Dist.   June 7, 1955.]

JOHN W. NEVAROV et al., Respondents, v. JACK A. NEVAROV et al., Appellants.

Siemon & Siemon for Appellants.

Baker, Palmer, Wall & Raymond for Respondents.

BARNARD, P. J.—This is an action for partition of real property and for an accounting. The parties owned 160 acres of land as tenants in common. They farmed the land as partners from 1944 to 1947, and the defendants farmed it thereafter. This action was brought in May, 1948. The complaint alleged common ownership of the land; that the Bank of America held a trust deed as security for a loan of $10,000; that there were no other liens or encumbrances; that both parties had advanced money for the benefit of the common property; and that the defendants had failed to account for rents and profits received. The prayer was for a partition and for an accounting. The defendants filed a cross-complaint alleging that the property was held by the parties as tenants in common, and that there were no liens and encumbrances other than the trust deed held by the Bank of America. The prayer was for a partition of the real property, that the liens and encumbrances be determined, and for an accounting as to the partnership operations and as to the advances for the common property made by the respective parties. No *lis pendens* was filed by either party.

The court found, among other things, that the parties owned the land as tenants in common; and that the plaintiffs had contributed $25,237.63 and the defendants had contributed $1,698.75. A judgment was entered on February 6, 1952, ordering the land and certain described personal property sold, and appointing a referee for that purpose. It was further ordered that the proceeds be applied to the debts and expenses and all liens, including that of the Bank of America and the amount which might be found due to S. P. Gregory; to the payment of $1,000 allowed as attorneys' fees to the attorneys for each party; to the payment of $25,237.63 to the plaintiffs and $1,698.75 to the defendants; and the balance to be distributed one-half to the plaintiffs and one-half to the defendants. It was further ordered that the defendants should vacate the property on or before February 28, 1952, and that if they failed to do so they should pay the plaintiffs $2,400 as rent for the year 1952, this amount to be deducted from any amount payable to the defendants and paid to the plaintiffs.

The defendants appealed from that judgment, the only points raised being that the court had erred in allowing certain credits which affected the amounts held by the court to have been advanced by the respective parties for the benefit of the property. On that appeal, this court modified the

judgment so as to provide that after the payment of the expenses and encumbrances mentioned in the judgment there should be paid to the plaintiffs the sum of $22,166.65 and paid to the defendants the sum of $15,727.77, before the remainder was equally divided.

Because of the death of the referee thus appointed the court, on December 7, 1953, made an order appointing three persons as referees, ordering them to sell the property and from the proceeds to pay the claims and liens, as authorized by the prior judgment, to report to the court, and that "all other proceeds shall be held pending an accounting by the referees." On December 11, 1953, the plaintiffs moved for an order adjudging that the defendant should pay them $2,400 rent for 1952, as required by the judgment, to be deducted from the defendants' share of the proceeds of the sale. On January 14, 1954, an order was made reciting that evidence had been received, finding that the defendants did not vacate the property but remained in possession throughout the year 1952, and ordering them to pay the plaintiffs $2,400, to be deducted from their share of the proceeds. A motion for a new trial on that order was made and denied. On February 2, 1954, an order was made appointing an appraiser and an appraisement was later filed, appraising the real property at $28,000 and the personal property at $1,320.

On April 13, 1954, the report of the referees was filed reporting that they had sold the land to the plaintiffs for $25,200 cash, that this was the best bid that could be obtained and was more than 90 per cent of the appraised value, and that if the sale was confirmed the proceeds should be applied to the payment of the expenses, the taxes, the redemption from a tax sale, the balance due the Bank of America, and the attorneys' fees, as provided in the judgment, before any payment to the parties. On April 23, 1954, the court made an order confirming this sale. On May 6, 1954, the plaintiffs gave notice of a motion to vacate this order confirming the sale on the ground that less than 10 days' notice of the motion to confirm had been given; and also filed a new notice of motion for an order confirming the sale and directing the payment of the various expenses and liens, and the division of the balance of the proceeds. The plaintiffs then filed an affidavit for an order to show cause, alleging that four crop mortgages given by the defendants had been recorded and were liens on the property, that $919.76 had been deposited in court which should be ordered paid to a pump company,

and seeking an order that the defendants' share of the proceeds be used to pay these crop mortgages and that the $919 be turned over to the pump company. The defendants filed an affidavit in opposition to this motion alleging that part of the crop mortgages were paid and part not, that the crop mortgages were not a lien on the land, and that the parties had paid various sums for improvements subsequent to the entry of the judgment of February 6, 1952. They also filed objections to any further proceedings for partition of the property until amended pleadings were filed, notice of *lis pendens* given, and a new decree entered determining the condition of the title and the final contributions of the parties. On June 7, 1954, the court entered an order ' vacating the prior order confirming the sale, and entered an order confirming the sale of the real property to the plaintiffs for $25,200 and the report of the referees, and further ordering that from the proceeds the referees should pay the expenses of sale; all taxes and sums necessary to redeem from tax sales; the unpaid balance of the note to the Bank of America; the judgment in favor of S. P. Gregory in the sum of $738.59; certain sums to the auditor and to the attorneys; and to distribute to the plaintiffs 22,166.65/37,894.42 and to the defendants 15,727.77/37,894.42 of the cash remaining, and from the sum so payable to the defendants to pay to the plaintiffs the sum of $2,400 pursuant to the prior judgment. The defendants have appealed from this order confirming the sale of the real property.

It is first contended that the charge of $2,400 against the appellants for failure to vacate the property, as required by the judgment of February 6, 1952, is unauthorized and void. It is argued that appellants, being codefendants, were not chargeable with rent under the familiar rule that each cotenant is entitled to possession and one may not collect rent from the other in the absence of an agreement. On the former appeal a similar contention was upheld with respect to rental for the years 1949, 1950 and 1951 since there was no agreement for those years. ▆ The portion of the judgment of February 6, 1952, which ordered the appellants to vacate the property by February 28, 1952, or in the event they did not do so to pay $2,400 for that year, was not mentioned on the former appeal and was not there considered. This action was not only one for partition but also one for an accounting. The question now raised could have been raised on that appeal and the judgment of February 6, 1952, as

modified, became final. The court in that judgment ordered the land to be sold and also passed upon the accounting issue as then presented. As a part of the issues, it had the jurisdiction to end the appellants' right of occupancy of the land, to enable the land to be sold, and to fix the value of the rent for that year in the event of appellants' failure to promptly surrender possession. If there was error in this particular order it should have been raised on the former appeal. That part of the judgment is now binding on the appellants, and the usual rule with respect to the right of one cotenant to collect rent from the other cotenant is not applicable under the circumstances now appearing.

It is further contended that the title to the real property being partitioned was not in the condition required by law to authorize a sale; that there are liens and cross-demands arising pendente lite which have not been adjudicated; and that new proceedings for the sale of the property, the determination of the liens, and a full accounting should be had. It is argued that the court could not order a sale of the real property without determining the liens and bringing in any necessary parties; that it appears that subsequent liens have been filed, the amount and extent of which have not been determined; that it appears from the record that various amounts have been paid by the parties subsequent to the judgment of February 6, 1952, upon the bank's trust deed and for the benefit of the properties, which have not been determined by the court; and that the personal property which the court ordered to be sold has not been sold.

It was admitted by the pleadings that the Bank of America had a lien under its trust deed and the bank was made a party to the action. Both parties alleged that there were no other liens or encumbrances. Apparently, it appeared at the trial that a judgment lien had accrued in favor of S. P. Gregory but the court, in its judgment of February 6, 1952, merely ordered the payment of this lien without specifying the amount. From the affidavits filed shortly prior to the order confirming the sale it appears that there may or may not be other liens, the existence or amounts of which have not been determined or passed upon by the court. It also appears that certain payments on the trust deed, and otherwise, may have been made by the parties subsequent to the judgment of February 6, 1952. So far as indicated by the record, these matters were not determined or passed upon by the court. There is nothing in the record indicating that

the personal property ordered to be sold has ever been sold, or its value considered.

There is nothing in the record to indicate that the court was without jurisdiction to enter its original order of sale contained in the judgment of February 6, 1952. The pleadings and the evidence at that time disclosed no lack of jurisdiction, and no complaint was made with respect to that matter on the appeal from that judgment. We therefore hold that a new order of sale is not necessary. It does appear, however, that several matters arising subsequent to that judgment were not determined before the order confirming this sale was made. The personal property should be sold and accounted for, and further proceedings should be had determining the other matters above mentioned before a final order is made determining the proportionate interest of the parties in any balance remaining from the proceeds of this sale.

The judgment is affirmed except for that portion of the last paragraph thereof which distributes certain percentages of the balance remaining from the proceeds of the sale to the respective parties; that portion is reversed with instructions to sell the personal property, with an accounting in that connection; to determine whether or not there are any other liens which should be paid; to determine what credits and charges the parties are entitled to since the accounting accepted in the judgment of February 6, 1952, as modified; and to then determine what percentage of the balance each of the parties is entitled to in the light of such further findings. The appellants to recover costs on appeal.

. Griffin, J., and Mussell, J., concurred.