[Nos. A098455, A096588. First Dist., Div. Two. Mar. 3, 2003.]

PLANNED PARENTHOOD GOLDEN GATE, Plaintiff and Respondent,
v.
JEANNETTE GARIBALDI et al., Defendants and Appellants.

[No. A098457. First Dist., Div. Two. Mar. 3, 2003.]

PLANNED PARENTHOOD GOLDEN GATE, Plaintiff and Respondent,
v.
ROSSI FOTI, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to rules 976(b) and 976.1 of the California Rules of Court, this opinion is certified for publication with the exception of parts III.A.3. and III.B.

**COUNSEL**

Life Legal Defense Foundation, Catherine W. Short; and Michael Millen for Defendant and Appellant Rossi Foti.

Terry L. Thompson for Defendants and Appellants Jeannette Garibaldi and Louie Garibaldi.

Doug Rendleman for Washington and Lee University School of Law as Amicus Curiae on behalf of Defendants and Appellants.

Bingham McCutchen, Beth H. Parker and Kari Lynn Krogseng for Plaintiff and Respondent.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

In 1995 Planned Parenthood Association of San Mateo County obtained a permanent injunction limiting demonstration activity outside its clinic in San Mateo (the 1995 injunction). In February 2001, Planned Parenthood Golden Gate (PPGG)[1] filed the instant action seeking a declaration that the 1995 injunction applies to appellants, Rossi Foti (Foti) and Jeannette and Louie Garibaldi (the Garibaldis). The trial court denied the Garibaldis' motion to strike PPGG's complaint pursuant to section 425.16 of the Code of Civil Procedure, California's anti-SLAPP (strategic lawsuit against public participation) statute. Thereafter, the court granted PPGG summary judgment. The Garibaldis separately appealed from the order denying their motions to strike and from the summary judgment. Foti also appealed from the summary judgment. This court consolidated these three related appeals.

We affirm the order denying the Garibaldis' motions to strike. However, we reverse the summary judgment because there are triable issues of material fact as to whether the 1995 injunction applies to appellants.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The 1995 Injunction*

Planned Parenthood Association of San Mateo County obtained the 1995 injunction in a state court action it filed in September 1993. (*Planned Parenthood Assn. v. Operation Rescue* (1996) 50 Cal.App.4th 290, 298 [57

---

[1]PPGG describes itself as the resulting entity of a merger among Planned Parenthood of Marin, Sonoma and Mendocino, Planned Parenthood Alameda-San Francisco, and Planned Parenthood of San Mateo County. Appellants do not dispute this assertion.

Cal.Rptr.2d 736] (*Planned Parenthood v. ORC*).) The 1995 injunction was sought and granted to remedy problems caused by the *Planned Parenthood v. ORC* defendants' demonstration activities at Planned Parenthood's clinic in San Mateo (the San Mateo clinic) which commenced in 1988 and continued even after Planned Parenthood obtained temporary federal injunctive relief.[2]

The 1995 injunction was entered against two named defendants, Operation Rescue of California (ORC) and Robert Cochran (Cochran). According to its terms, the 1995 injunction applies to: "Defendants and their agents, employees, representatives and all persons acting in concert or participation with them, or either of them, and all persons with actual notice of this judgment."

The 1995 injunction restricts demonstration activities at the San Mateo clinic and also imposes restrictions on demonstration activities directed at "Dr. O.," a physician who treated patients at the San Mateo clinic.[3] The provisions pertaining to the San Mateo clinic restrain and enjoin individuals subject to the 1995 injunction from directly or indirectly: (1) "Entering or blocking or obstructing the free and direct passage of any other person into or out of" the clinic; (2) "Demonstrating, picketing, distributing literature, or counseling" on clinic property "or within fifteen (15) feet of such private property"; (3) "Entering or blocking or obstructing the ingress or egress of any vehicle to or from any parking area" in front of or behind the clinic; (4) "Obstructing or impeding the movement of any person" who is moving between a vehicle and the clinic or using a walkway leading to the clinic; (5)

---

[2]During this period, the defendants organized and coordinated regular protests at the clinic. (*Planned Parenthood v. ORC, supra,* 50 Cal.App.4th at p. 294.) Those protests included "several 'very large . . . blockades' of more than 100 protestors [that] resulted in the clinic's temporary closure. Typically, 'rows of people block[ed] all the doors' to the clinic. On at least one occasion police arrested protestors inside the clinic. . . . Patients found the protests threatening, and some did not come into the clinic for appointments. Noise from the protests could be heard in the patient waiting room, which abuts the sidewalk. The protests caused the clinic to shift its entrance doors and to hire and train staff for an 'escort program' to bring patients through the protestors." (*Id.* at p. 296.) Patients were angered, upset and frightened by these protestors who tried to prevent people from driving into the clinic parking lot and demonstrated so loudly they could be heard inside the clinic. (*Id.* at p. 297.) There was evidence that the patients' heightened stress levels complicated their medical procedures. Some required additional counseling or medication. Others canceled or delayed appointments in order to avoid protestors. The evidence showed that delaying an abortion procedure increased the likelihood patients would experience complications. (*Ibid.*)

[3]PPGG ignores the portion of the 1995 injunction pertaining to Dr. O. We do not focus on that portion of the injunction since there is no evidence that appellants have had any interactions with Dr. O. However, it is important to note that these restrictions are part of the injunction that the trial court found applies to the appellants in the present case. As will become evident, it is also important to our analysis that there was significant evidence regarding the conduct of the defendants in *Planned Parenthood v. ORC* which justified the restrictions pertaining to Dr. O. (*Planned Parenthood v. ORC, supra,* 50 Cal.App.4th at pp. 294-296.)

"Shouting, screaming or otherwise producing loud noises which can be heard" in the clinic; (6) "Physically touching threatening to physically touch, or shouting" at people entering or exiting the clinic.

## B. *The 1998 Action*

On July 24, 1998, Foti filed a complaint for damages and injunctive relief against PPGG and several individuals alleging defamation, abuse of process, infliction of emotional distress and battery (the 1998 action). Foti alleged that PPGG and "escorts" employed by PPGG unlawfully interfered with him in order to prevent him from exercising his constitutional right to engage in picketing, leafleting and counseling outside the San Mateo clinic and outside Planned Parenthood clinics in Menlo Park and Redwood City. (See *Planned Parenthood Golden Gate v. Superior Court* (2000) 83 Cal.App.4th 347, 351 [99 Cal.Rptr.2d 627].)[4]

PPGG filed a cross-complaint in the 1998 action against Foti, the Garibaldis and others, alleging interference, harassment, emotional distress, abuse of process, false arrest, defamation and conspiracy. (*Planned Parenthood Golden Gate v. Superior Court, supra,* 83 Cal.App.4th at p. 351.) PPGG alleged that the cross-defendants habitually harassed and intimidated Planned Parenthood employees, volunteers, patients and their companions while protesting at Planned Parenthood clinics. (*Ibid.*)

While the parties were attempting to negotiate a settlement of the 1998 action, a dispute arose as to whether the 1995 injunction applies to Foti and the Garibaldis. This dispute became a "major sticking point" in the negotiations. To resolve this dispute, the parties agreed that (1) proceedings in the 1998 action would be stayed and (2) PPGG would file a new complaint to determine whether the 1995 injunction applied to Foti and the Garibaldis.

On December 20, 2000, the parties presented their stipulation to the Honorable John W. Runde. Pursuant to that stipulation, the superior court stayed the trial in the 1998 action, which had been set for January 8, 2001, "pending the filing . . . and disposition of the new lawsuit."

## C. *The Present Action*

On February 16, 2001, PPGG filed a complaint for declaratory relief against Foti and the Garibaldis. PPGG alleged that defendants were served with the 1995 injunction but "continue to demonstrate, picket and distribute

---

[4]In *Planned Parenthood Golden Gate v. Superior Court, supra,* 83 Cal.App.4th 347, this court resolved a discovery dispute that arose in the 1998 action.

literature on and within fifteen feet of the [San Mateo] Clinic property and also enter and obstruct the free and direct passage of people into and out of the Clinic." PPGG also alleged, on information and belief, that defendants act in concert and participation with ORC when conducting their demonstration activities. PPGG sought a declaration that "defendants are bound by the [1995] Injunction and must therefore comply with its terms or face contempt."

On May 8, 2001, the Garibaldis filed motions to strike PPGG's complaint pursuant to the anti-SLAPP statute, Code of Civil Procedure section 425.16. The Garibaldis argued the complaint should be stricken because it lacks merit and was "brought solely for the purpose of interfering with the valid exercise of the [Garibaldis'] constitutional rights to freedom of speech." A hearing on the motions to strike was held on May 25, 2001, before the Honorable George A. Miram. In an order filed June 26, 2001 (the June 26 order), the court denied the Garibaldis' motions to strike.

On January 18, 2002, PPGG filed a motion for summary judgment. It argued that Foti and the Garibaldis are subject to the 1995 injunction as a matter of law because undisputed facts show that they act in concert with each other and in concert or participation with ORC and Cochran in conducting their demonstration activities at the San Mateo clinic. PPGG also argued that the 1995 injunction applies to all persons with actual notice of it and that undisputed facts establish that Foti and the Garibaldis have notice of the 1995 injunction. On March 4, 2002, a hearing on the summary judgment motion was held before the Honorable Joseph Bergeron. On March 5, the court filed an order granting PPGG's motion for summary judgment. Judgment was entered on March 22, 2002.

III. DISCUSSION

A. *Summary Judgment*

1. *Standard of review and issues presented*

■ "A motion for summary judgment must be granted if all of the papers submitted show 'there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" (*Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 69 [81 Cal.Rptr.2d 360] (*Scheiding*).) "A motion for summary judgment must be denied if the moving papers show there is a triable issue of fact. [Citation.] In ruling on the motion, a court must consider both the evidence 'and all inferences reasonably deducible from the evidence . . . .' (Code Civ. Proc.,

§ 437c, subd. (c).) The moving party's evidence must leave no room for conflicting inferences as to material facts. '[S]ummary judgment shall not be granted . . . based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.' (Code Civ. Proc., § 437c, subd. (c).)" (*KOVR-TV, Inc. v. Superior Court* (1995) 31 Cal.App.4th 1023, 1027-1028 [37 Cal.Rptr.2d 431].)

"The trial court's summary judgment rulings are subject to de novo review. [Citation.]" (*Scheiding, supra,* 69 Cal.App.4th at p. 69.) We view the evidence in a light favorable to appellants, we liberally construe appellants' evidentiary submission while strictly scrutinizing respondent's evidence, and we resolve any evidentiary doubts or ambiguities in appellants' favor. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768-769 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

In the present case, the trial court granted PPGG summary judgment because it found that Foti and the Garibaldis are bound by the 1995 injunction as a matter of law. By its terms, the 1995 injunction applies to ORC and Cochran, the named defendants in *Planned Parenthood v. ORC, supra,* 50 Cal.App.4th 290, and to two additional categories of individuals: (1) ORC's and/or Cochran's "agents, employees representatives and all persons acting in concert or participation with them or either of them" (the in concert provision) and (2) "all persons with actual notice of this judgment" (the actual notice provision). PPGG maintains that both of these provisions apply to Foti and the Garibaldis as a matter of law. Appellants maintain that the actual notice provision of the 1995 injunction is unconstitutional and invalid, and that there are disputed issues of material fact as to whether the in concert provision of the injunction applies to them. To resolve these issues, we first consider the validity of the provision governing the reach of the 1995 injunction. We then address the factual evidence regarding these particular appellants.

### 2. *The injunction's "actual notice" provision is invalid*

" ' "An injunction is obviously a personal decree. It operates on the person of the defendant by commanding him to do or desist from certain action." ' [Citation.]" (*People ex rel. Gwinn v. Kothari* (2000) 83 Cal.App.4th 759, 765 [100 Cal.Rptr.2d 29] (*Kothari*).) Indeed it may "deprive the enjoined parties of rights others enjoy precisely because the enjoined parties have abused those rights in the past." (*People v. Conrad* (1997) 55 Cal.App.4th 896, 902 [64 Cal.Rptr.2d 248] (*Conrad*).) Thus, it is well established that "injunctions are not effective against the world at large.

[Citations.]" (*Kothari, supra,* 83 Cal.App.4th at p. 765; see also *Conrad, supra,* 55 Cal.App.4th at p. 902.) On the other hand, the law recognizes that enjoined parties "may not nullify an injunctive decree by carrying out prohibited acts with or through nonparties to the original proceeding. [Citations.]" (*Conrad supra,* 55 Cal.App.4th at p. 902.) Thus, an injunction can properly run to classes of persons with or through whom the enjoined party may act. (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 906 [141 Cal.Rptr. 133, 569 P.2d 727]; *Conrad, supra,* 55 Cal.App.4th at pp. 902-903.) However, "a theory of disobedience of the injunction cannot be predicated on the act of a person not in any way included in its terms or acting in concert with the enjoined party and in support of his claims." (*Berger v. Superior Court* (1917) 175 Cal. 719, 721 [167 P. 143, 15 A.L.R. 373]; see also *In re Berry* (1968) 68 Cal.2d 137, 155-156 & fns. 13-14 [65 Cal.Rptr. 273, 436 P.2d 273].)

 These legal principles establish that the actual notice provision in the 1995 injunction is not enforceable. "[P]ersonal jurisdiction and notice are not enough to subject a person to the restraint of an injunction. The *order* must be directed against that person, either by naming that person as an individual or by designating a class of persons to which that person belongs. [Citations.] [¶] If the person charged with violation was neither named in the injunction individually or as a member of a class, nor as aiding or abetting a person so included, he cannot be brought within the prohibition merely by being served with a copy of the writ. [Citation.]" (6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 391, p. 318.)[5]

PPGG argues that the 1995 injunction, "including the actual notice provision, was previously affirmed by this Court." This court has never previously reviewed the 1995 injunction. Division Three of this district decided the appeal filed by ORC and Cochran in *Planned Parenthood v. ORC, supra,* 50 Cal.App.4th 290. In that case, Cochran argued, among other things, that the actual notice provision rendered the 1995 injunction constitutionally overbroad. The court rejected this argument on the ground that Cochran was a party who was specifically named in the injunction and therefore lacked standing to object to the actual notice provision. (*Id.* at p. 304.) Thus, the *Planned Parenthood v. ORC* court did not offer any opinion as to the validity of the actual notice provision of the 1995 injunction.

---

[5]To support its contention that actual notice is the only prerequisite for imposing an injunction against "someone," PPGG cites cases involving substantially different factual and legal circumstances. (See *Ex parte Lennon* (1897) 166 U.S. 548, 554 [17 S.Ct. 658, 660, 41 L.Ed. 1110]; *U.S. v. Hall* (5th Cir. 1972) 472 F.2d 261, 267; *U.S. v. Baker* (9th Cir. 1981) 641 F.2d 1311, 1315; *Mechanic v. Gruensfelder* (Mo.Ct.App. 1970) 461 S.W.2d 298, 307.) We will not discuss these cases individually since PPGG chose not to. Suffice to say, that none of them affirmed a provision which extended the scope of a permanent injunction to any person with notice of it.

PPGG contends the "actual notice provision is an indispensable tool to effectuate the court's power to grant equitable relief among all parties affected by the intense emotions surrounding the abortion debate." In fact, the actual notice provision is inconsistent with the very nature and purpose of injunctive relief because it purports to extend a remedy beyond the context of the specific dispute which justifies that remedy. "An injunction, by its very nature, applies only to a particular group (or individuals) and regulates the activities, and perhaps the speech, of that group. It does so, however, because of the group's past actions in the context of a specific dispute between real parties. The parties seeking the injunction assert a violation of their rights; the court hearing the action is charged with fashioning a remedy for a specific deprivation, not with the drafting of a statue addressed to the general public." (*Madsen v. Women's Health Center, Inc.* (1994) 512 U.S. 753, 762 [114 S.Ct. 2516, 2523, 129 L.Ed.2d 593] (*Madsen*).)

The intensity of the "abortion debate" does not somehow entitle PPGG to broader relief than parties seeking equitable relief in other contexts. If anything, the opposite is true. ▮ "As a general matter, . . . protestors enjoy full constitutional protection for the expression and communication of their views concerning the public issue of abortion. [Citation.] This is particularly true when these protected activities occur on the public streets and sidewalks, traditionally viewed as the quintessential public forum. [Citation.] An injunction curtailing protected expression will be upheld only if the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest. [Citation.]" (*Planned Parenthood v. ORC, supra,* 50 Cal.App.4th at p. 299.) ▮ The actual notice provision cannot satisfy this requirement; because it purports to enjoin all demonstrators in addition to the enjoined parties, the restriction is overbroad on its face. (See, e.g., *In re Berry, supra,* 68 Cal.2d at pp. 155-156 [provision extending scope of injunction to persons "wholly unaffiliated" with named parties is unconstitutionally vague and overbroad].)

PPGG argues that, without the actual notice provision, one antichoice protestor can simply be replaced with another and avoid the reach of the injunction. But antichoice protestors are not fungible. ▮ A " 'mutuality of purpose' is not enough" to bind nonparties to an injunction restricting demonstration activity at an abortion clinic; "it must be [their] actual relationship to an enjoined party, and not their convictions about abortion, that make them contemners." (*Conrad, supra,* 55 Cal.App.4th at p. 903.) Put another way, if we permit PPGG to utilize an actual notice provision to obtain injunctive relief against all anti-abortion protestors, the injunction would be content based and virtually impossible to justify under current First

Amendment jurisprudence. (See *Madsen, supra,* 512 U.S. at pp. 762-763 [114 S.Ct at pp. 2523-2524]; *Planned Parenthood Shasta-Diablo, Inc. v. Williams* (1995) 10 Cal.4th 1009, 1019-1020 [43 Cal.Rptr.2d 88, 898 P.2d 402] (*Williams*).)[6]

PPGG's legitimate concern that an enjoined party might attempt to undermine the effect of an injunction by enlisting the aid of a nonparty can be adequately addressed by a provision extending the reach of the injunction to agents, employees and those who act in concert with an enjoined party. The 1995 injunction contains such a provision. That in concert provision ensures that "a nonparty to an injunction is subject to the contempt power of the court when, with knowledge of the injunction, the nonparty violates its terms with or for those who are restrained." (*Conrad, supra,* 55 Cal.App.4th at p. 903, italics omitted.)

PPGG argues the actual notice provision should be approved as a time-saving device. According to PPGG, requiring it to litigate with appellants in order to obtain injunctive relief against them would be a waste of time because: (1) the restrictions imposed by the 1995 injunction were expressly approved in *Planned Parenthood v. ORC*; (2) "the behavior of each, individual protestor is not determinative of the ultimate remedy" to which PPGG is entitled; and (3) a separate trial "will not produce different injunctive relief." Virtually every prong of this argument is erroneous.

First, the *Planned Parenthood v. ORC* court affirmed in part *and reversed in part* the judgment imposing the 1995 injunction against ORC and Cochran. (*Planned Parenthood v. ORC, supra,* 50 Cal.App.4th 290.) The court upheld a restriction which precluded appellants from demonstrating within 15 feet of the San Mateo clinic (the 15-foot exclusion zone provision). (*Id.* at pp. 299-300.) However it found that other provisions of the 1995 injunction were overbroad and unconstitutional because they burdened more of the defendants' speech than was justified by the evidence. (*Id.* at pp. 301-304.)

Second, although the *Planned Parenthood v. ORC* court upheld the 15-foot exclusion zone provision, it did not, as PPGG intimates, approve that provision against all protestors who demonstrate at the San Mateo clinic. In reaching its decision, the court expressly acknowledged this restriction affected the constitutionally protected speech rights of appellants in that

---

[6]These same considerations undermine PPGG's argument that appellants can be subject to the 1995 injunction as members of the class that was intended to be restrained. To make this argument, PPGG misconstrues the language of the actual notice provision as applying to a class consisting of all anti-abortion protestors with notice. Such a provision, had it been included in the 1995 injunction, would have been constitutionally invalid.

case; its practical effect was that those appellants had to stay off the public sidewalk at the front of the clinic and to move either to the sides or across the street. (*Planned Parenthood v. ORC, supra*, 50 Cal.App.4th at p. 300.) Nevertheless, the court found the restriction was justified as to those appellants because there was evidence that (1) they actually obstructed access to the clinic and intimidated patients; (2) they had violated a less restrictive exclusion provision imposed by a prior injunction; and (3) they could easily be seen and heard from across the street. (*Id.* at pp. 300-301.) Thus, "inclusion of all the sidewalk fronting the clinic property within the 15-foot exclusion zone" did not burden "more speech than was necessary to prevent intimidation and permit access." (*Id.* at p. 301.)

As the appellate decision in *Planned Parenthood v. ORC* illustrates, the behavior of the individual protestors and/or the specific groups against whom an injunction is sought clearly is determinative of the ultimate remedy. (*Planned Parenthood v. ORC, supra*, 50 Cal.App.4th 290.) In that case, evidence regarding the defendants' actual protest activities at that clinic *and* the adverse effect those activities had on legitimate state interests justified the 15-foot exclusion zone provision as a restriction that burdened no less of the *defendants*' speech than was necessary. This evidence was necessary to affirm the judgment against Cochran and ORC.

■ Third, PPGG's conclusion that a separate trial "will not produce different injunctive relief" is apparently based on the mistaken notion that the state's interests in regulating anti-abortion protest activity are so strong that restrictions like the 15-foot exclusion zone imposed by the 1995 injunction can and should be applied to all anti-abortion protestors as a matter of course.

Clearly,"[t]he state has strong concerns in: (1) protecting the freedom of women to seek lawful services in connection with pregnancy, (2) the delivery of those services with appropriate privacy, (3) preserving public safety and order by ensuring the free flow of vehicular and pedestrian traffic, and (4) preserving property rights." (*Planned Parenthood v. ORC, supra*, 50 Cal.App.4th at p. 299, citing *Madsen, supra*, 512 U.S. at pp. 767-768 [114 S.Ct. at p. 2526], and *Williams, supra*, 10 Cal.4th at pp. 1017, 1020-1023.) However, simply articulating these interests, as PPGG has done here, does not answer whether a particular restriction violates a particular individual's First Amendment rights. To answer that question, the court must engage in a fact-specific inquiry in order to ensure that the challenged restriction does not burden more speech than necessary to serve a significant government interest. (*Planned Parenthood v. ORC, supra*, 50 Cal.App.4th at p. 299; *Madsen, supra*, 512 U.S. at p. 765 [114 S.Ct. at pp. 2524-2525]; *Schenck v.*

*Pro-Choice Network of Western N.Y.* (1997) 519 U.S. 357, 374 [117 S.Ct. 855, 865, 137 L.Ed.2d 1].) The outcome of that inquiry certainly does depend on the specific behavior of the individual(s) against whom the restriction is imposed.[7] ▆▆ PPGG argues that the actual notice provision in the 1995 injunction is analogous to the restriction approved by the United States Supreme Court in *Hill v. Colorado* (2000) 530 U.S. 703 [120 S.Ct. 2480, 147 L.Ed.2d 597]. *Hill* involved a First Amendment challenge to a provision in a Colorado statute that regulates speech-related conduct within 100 feet of the entrance to any health care facility. (*Id.* at p. 708 [120 S.Ct. at p. 2485].) The 1995 injunction is not analogous to the Colorado statute at issue in *Hill.* As noted above, injunctions are not effective against the world at large. "This is not just because the world at large is not fairly deemed likely to abuse constitutional rights; it is also because injunctions are fashioned and enforced without the safeguards that attend the passage and govern the enforcement of more general prohibitions." (*Conrad, supra,* 55 Cal.App.4th at p. 902.) Injunctions "carry greater risks of censorship and discriminatory application than do general ordinances." (*Madsen, supra,* 512 U.S. at p. 764 [114 S.Ct. at p. 2524].) Furthermore, an injunction is a "judicial remed[y] tailored to specific circumstances rather than 'a legislative choice regarding the promotion of particular societal interests.' "[8]

---

[7]*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090 [60 Cal.Rptr.2d 277, 929 P.2d 596] (*Acuna*), does not support PPGG's argument to the contrary. The *Acuna* court rejected various challenges to provisions in a *preliminary* injunction that was entered against individual members of an alleged street gang who were sued for violating the state's public nuisance statutes. (*Id.* at p. 1100.) That preliminary injunction, which precluded named individuals from engaging in specific activities in a designated neighborhood did not contain a provision extending its scope to any person with notice.

Moreover, the *Acuna* court's analysis is fundamentally inconsistent with PPGG's arguments in this case. (*Acuna, supra,* 14 Cal.4th 1090.) For example, the court found the preliminary injunction at issue in that case was not overbroad within the meaning of the First Amendment because "[t]he only individuals subject to the trial court's interlocutory decree . . . are *named parties* to this action . . . ." (*Id.* at p. 1114.) The court also found that the injunction did not infringe the defendants' constitutionally protected associational interests because the evidence of the gang members' activities established that the restrictions burdened no more speech than necessary to serve a significant governmental interest. (*Id.* at p. 1120.) Finally, the *Acuna* court found the preliminary injunction could properly have been entered against the gang as a group or against the 38 individual defendants who were members of that gang. As the court explained, "there was sufficient evidence . . . that the gang and its members . . . were responsible for the public nuisance, that each of the individual defendants either admitted gang membership or was identified as a gang member, and that each was observed by police officials in the . . . neighborhood" where the challenged activities had occurred. (*Id.* at p. 1125.) In light of these rulings, we are very puzzled by PPGG's decision to rely on *Acuna* in this case.

[8]For these reasons, a different and more stringent test is utilized to determine whether an injunction violates the First Amendment. A time, place and manner regulation is constitutional if it is narrowly tailored to serve a significant governmental interest. A content neutral injunction is evaluated to determine " 'whether the challenged provisions of the injunction

(*Williams, supra,* 10 Cal.4th at p. 1017, quoting *Madsen, supra,* 512 U.S. at p. 764 [114 S.Ct. at p. 2524].) In light of these fundamental distinctions between legislation and injunctions, PPGG'S reliance on *Hill* is misplaced.

PPGG's final contention is that this court should enforce the actual notice provision because it effectuates one of the basic policies underlying injunctive relief—to prevent a multiplicity of judicial proceedings. The policy against multiplicity of judicial proceedings is intended to prevent conflicting or vexatious litigation. "Where there exists two or more actions involving the same subject matter or the same facts or principles, restraint is necessary to prevent a multiplicity of judicial proceedings. [Citation.] Restraint is also necessary to avoid unseemly conflict between courts that might arise if they were free to make contradictory decisions relating to the same controversy." (*Rynsburger v. Dairymen's Fertilizer Coop, Inc.* (1968) 266 Cal.App.2d 269, 279 [72 Cal.Rptr. 102], citing *Scott v. Industrial Acc. Commission* (1956) 46 Cal.2d 76, 81-82 [293 P.2d 18]; see also Code Civ. Proc., § 526, subd. (a)(6).) This policy is not effectuated by the actual notice provision which purports to bind a nonparty to a judgment which abridges the free exercise of speech in a public forum solely on the basis that the nonparty has notice of the judgment. Absent evidence that Foti and the Garibaldis act together with or on behalf of parties enjoined by the 1995 injunction, the controversy between these appellants and PPGG does not involve the same parties, subject matter, or facts which supported the judgment pursuant to which the 1995 injunction was entered.

For all of these reasons, we hold the actual notice provision does not bind Foti and the Garibaldis to the 1995 injunction. Actual notice of an injunction is a requirement but cannot be an independent ground upon which to apply an injunction to a nonparty. Therefore, the 1995 injunction applies to the defendants against whom it was entered (ORC and Cochran) and their agents, employees, representatives and all persons acting in concert or participation with them, or either of them who have actual notice of the judgment.

3. *There Are Triable Issues Regarding Application of the "In Concert" Provision**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

burden no more speech than necessary to serve a significant government interest.' " (*Williams, supra,* 10 Cal.4th at p. 1017, quoting *Madsen, supra,* 512 U.S. at p. 765 [114 S.Ct. at p. 2525].)

*See footnote, *ante*, page 345.

B. *The Motions to Strike**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The June 26 order denying the motions to strike is affirmed but the summary judgment in favor of PPGG is reversed. Foti shall recover his costs on appeal; the Garibaldis and PPGG shall bear their own costs.

Kline, P. J., and Ruvolo, J., concurred.

---

*See footnote, *ante*, page 345.