Filed 6/6/14  Marriage of Kahn CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of JESSIE and ROBERT KAHN. | |
| JESSIE A. KAHN, | E056344 |
| Respondent, | (Super.Ct.No. IND097341) |
| v. | **OPINION** |
| ROBERT S. KAHN, | |
| Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dale R. Wells, Judge.

Affirmed in part and dismissed in part.

Robert S. Kahn, Appellant in pro. per.

Law Offices of Michael L. DeFrank and Michael L. DeFrank for Respondent.

1

This is a proceeding for dissolution of the marriage between Robert S. Kahn and Jessie A. Kahn. The trial court entered a default judgment, as a discovery sanction, against Robert. In the judgment, the trial court found that an entity called Maverik Properties was community property; it directed the sale of Maverik and Maverik's assets. In a previous appeal, we affirmed the default judgment in all relevant respects.

A major asset of Maverik was a commercial building in Los Angeles called the Beverly Building. On remand, the trial court authorized Jessie to list the Beverly Building for sale. She then accepted an offer to purchase it, subject to the approval of the trial court. The trial court approved the sale; it also ordered that three trust deeds in favor of Robert and his girlfriend and a lis pendens filed by Robert be stricken.

Robert appeals. We will conclude that most of Robert's contentions are moot — particularly because the sale, although approved by the court, ultimately fell through. Robert's contentions attacking the trial court's order striking the liens are not moot; however, we will reject them on the merits. Hence, we will affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

In March 2009, Jessie filed this divorce proceeding.

In January 2010, the trial court appointed a receiver over all of the assets of Maverik, specifically including the Beverly Building. As part of the order of appointment, it enjoined Robert from "encumbering . . . the property . . . ."

2

In July 2010, as a discovery sanction, the trial court struck Robert's response and entered his default. In May 2011, it entered a default judgment. In the judgment, it found that Maverik was community property. It ordered, "Maverik . . . and its assets shall be sold." It retained jurisdiction to supervise the sale and to divide the proceeds.

On July 15, 2011, Robert filed a notice of appeal.[1]

On July 29, 2011, the trial court authorized Jessie to list the Beverly Building for sale.

Meanwhile, on various dates in 2011, three trust deeds were recorded against the Beverly Building, supposedly to secure debts to Robert or to his girlfriend, Daphne Gilbert-Kahn.

In February 2012, Jessie accepted an offer to purchase the Beverly Building, subject to court approval.

On March 1, 2012, Jessie filed a motion to strike the three trust deeds and to approve the sale of the building.

Meanwhile, also on March 1, 2012, Robert, purportedly on behalf of Maverik, filed an action against Jessie in Los Angeles Superior Court to quiet title to the Beverly Building. On March 15, 2012, in connection with that action, Robert filed a lis pendens against the Beverly Building.

---

[1] We take judicial notice of our file in the previous appeal.

3

On March 19, 2012, after hearing argument, the trial court granted the motion to approve the sale and to strike the three trust deeds.

On March 27, 2012, Jessie filed a motion to additionally strike the lis pendens.

On March 28, 2012, Robert filed a response to the motion to strike the lis pendens. He argued that: (1) the Los Angeles court had exclusive jurisdiction, (2) Jessie lacked the authority to negotiate the sale of the property, (3) the terms of the sale were "questionable," and (4) the recordation of the trust deeds did not violate the injunction.[2]

On April 9, 2012, again after hearing argument, the trial court granted the motion to strike the lis pendens.

II

THE SCOPE OF THE NOTICE OF APPEAL

Robert filed his notice of appeal on May 17, 2012. It specified that he was appealing from the order entered on March 19, 2012, striking the three trust deeds and approving its sale. It did not mention the order entered on April 9, 2012, striking the lis pendens.[3]

---

[2]     Robert's opposition to the earlier motion to approve the sale and to strike the three trust deeds has not been included in the appellate record. Hence, we may presume that it would not be material to deciding the issues raised. (Cal. Rules of Court, rule 8.163.) In any event, it seems likely that it was more or less identical to his opposition to the subsequent motion to strike the lis pendens.

[3]     Robert's Civil Case Information Statement likewise stated that he was appealing solely from the order entered on March 19, 2012.

4

Because Robert's notice of appeal did not specify that he was appealing from the April 9, 2012 order, we lack jurisdiction to review that order. "[W]here several judgments and/or orders occurring close in time are separately appealable . . . , each appealable judgment and order must be expressly specified — in either a single notice of appeal or multiple notices of appeal — in order to be reviewable on appeal. [Citations.]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶ 3:119.1, and cases cited.) Accordingly, we decline to consider his contentions as applied to that order.

III

MOOTNESS

Jessie filed a motion to dismiss this appeal as moot. We denied the motion, but we indicated that she could raise mootness again in her respondent's brief. She has now done so.

In support of the motion, Jessie's counsel testified that the proposed sale of the Beverly Building had "fallen through." In addition, Jessie requested judicial notice of the fact that the Los Angeles action had been dismissed; she offered us a copy (albeit uncertified) of a notice of the Los Angeles court's ruling.

In opposition, Robert pointed out that the trial court had not only ordered the sale, but had also stricken liens on the property. He argued that the order striking the liens was not moot.

We hereby grant Jessie's request for judicial notice. "Although it is both permissible and desirable that a court be furnished with a certified copy of a record or regulation of which it is asked to take judicial knowledge, to aid it in obtaining actual knowledge of the contents thereof [citations], the failure to furnish such does not foreclose an exercise of the court's authority to take judicial notice of the record or regulation in question. [Citation.]" (*People v. Haugh* (1963) 216 Cal.App.2d 603, 606-607.) Robert has not disputed the fact that the dismissal took place. (See *id*. at p. 607.)

Despite both the failure of the sale and the dismissal of the Los Angeles action, Robert's contentions challenging the trial court's order striking liens on the property are not moot. That order immediately and permanently deprived Robert (and his girlfriend) of a claimed interest in property. Subsequent developments have not altered or eliminated this effect of the order; if the property is sold tomorrow, Robert will still be unable to enforce the liens. Hence, Robert can contend that:

1. The Beverly Building was Robert's separate property, not community property.

2. The liens did not violate any court order.

However, because the sale will not take place, Robert's contentions that challenge the trial court's approval of that particular sale are moot. These include his contentions that:

1. The offer to purchase the property was unreasonable.

2. Jessie lacked the authority to do anything more than list the property for sale.

6

Moreover, because the Los Angeles action has been dismissed, Robert's contention that the Los Angeles court had exclusive jurisdiction is also moot. Even if we were to reverse on this ground, on remand, the trial court could immediately make an identical order striking the liens. (See *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1226-1227.) Robert does not claim to have suffered any prejudice from the order while the Los Angeles action was pending. "[A]n appeal is moot if '"the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief."' [Citation.]" (*Lockaway Storage v. County of Alameda* (2013) 216 Cal.App.4th 161, 175.)[4]

---

[4] We would reject this contention on the merits in any event.

Robert relies on Code of Civil Procedure section 760.040, subdivision (b), which provides that, in a quiet title action, "The court has complete jurisdiction over the parties to the action and the property described in the complaint and is deemed to have obtained possession and control of the property for the purposes of the action with complete jurisdiction to render the judgment provided for in this chapter." This simply means that the quiet title court can give complete relief. *Complete* jurisdiction is not the same thing as *exclusive* jurisdiction.

Robert also relies on Code of Civil Procedure section 760.050, subdivision (a), which provides that the proper court for the trial of a quiet title action is the county in which the real property is located. However, this is a divorce action, not a quiet title action. The quiet title statutes specifically provide, "The remedy provided in this chapter is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property." (Code Civ. Proc., § 760.030, subd. (a).)

Actually, if any court had exclusive jurisdiction, it was the Riverside County court, because it acquired jurisdiction first. (See generally *County of Siskiyou v. Superior Court* (2013) 217 Cal.App.4th 83, 89.)

7

Finally, because the previous appeal is no longer pending, Robert's contention that the trial court lacked jurisdiction due to the previous appeal is similarly moot. Even assuming Robert is correct, on remand, the trial court could simply issue an identical order striking the liens. And again, Robert does not identify any prejudice that he suffered before the previous appeal was resolved. Accordingly, we cannot grant him any effective relief.[5]

IV

THE CHARACTERIZATION OF THE BEVERLY BUILDING

Robert contends that the Beverly Building was his separate property, not community property.

This contention is barred, because the judgment declaring Maverik to be community property became final after the first appeal; it is no longer subject to attack in this appeal. (*Nevarov v. Nevarov* (1955) 133 Cal.App.2d 457, 460-461.)

Even if we had jurisdiction to reach this contention, the entry of Robert's default would bar him from raising it on appeal. In her petition, Jessie alleged that she had a community interest in Maverik. "Generally, a defendant in default 'confesses the material allegations of the complaint. [Citation.]' [Citation.]" (*Los Defensores, Inc. v. Gomez*

---

[5] Once again, we would reject this contention on the merits in any event. The filing of an appeal does not stay the enforcement of a judgment that directs the sale of real property. (Code Civ. Proc., § 917.4.) The judgment had ordered that Maverik and its assets (including the Beverly Building) be sold. Robert's appeal from the judgment could not prevent the trial court from enforcing that judgment as to real property.

8

(2014) 223 Cal.App.4th 377, 392.)  Thus, "the '"sufficiency of the evidence cannot be reviewed on an appeal from a default judgment." [Citation.]' [Citation.]" (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1303.)

If only out of an excess of caution, we note that Robert served verified interrogatory responses indicating that he had no separate property.  Moreover, in a declaration, he described the Beverly Building as "the last remaining asset of the marital estate . . . ."

It appears that Robert is raising this contention because, when he filed his opening brief, we had not yet decided the previous appeal.  Thus, he argues that, because the default was erroneous, he should be given an opportunity to litigate the correct characterization of the Beverly Building.  Ultimately, however, in the previous appeal, we upheld the default.  We therefore conclude this contention is barred.

V

ORDER STRIKING TRUST DEEDS

Robert contends that the trial court erred by striking the three trust deeds against the Beverly Building because their recordation did not violate any court order.

A.    *Additional Factual and Procedural Background*.

As mentioned earlier, in January 2010, when it appointed a receiver, the trial court enjoined Robert from "encumbering" the Beverly Building.

9

In support of her motion to strike the trust deeds, Jessie introduced a preliminary title report on the Beverly Building. It indicated that in 2011, the following trust deeds had been recorded against the property:

1. Executed by Maverik, in favor of Daphne Gilbert-Kahn, on February 15, 2011, to secure an indebtedness of $189,000.

2. Executed by Maverik, in favor of Robert, on September 30, 2011, to secure an indebtedness of $200,500.

3. Executed by Maverik, in favor of Daphne Gilbert-Kahn, on October 14, 2011, to secure an indebtedness of $50,000.

The trial court ordered these trust deeds stricken.

B.      *Analysis.*

Robert complains that the preliminary title report was "nothing more than a summary of exceptions and exclusions in [a] title insurance policy" and that Jessie failed to introduce the trust deeds themselves. In the trial court, however, Robert did not raise any evidentiary objection to the preliminary title report. Moreover, he conceded that the trust deeds had, in fact, been executed by Maverik and recorded. He concedes this again in his opening brief in this court.

Robert also argues that the trust deeds did not violate the injunction because the injunction applied to him, not Maverik, whereas the trust deeds were executed by Maverik.

"'""An injunction is obviously a personal decree.  It operates on the person of the defendant by commanding him to do or desist from certain action.'"  [Citation.]'  [Citation.]  . . .  Thus, it is well established that 'injunctions are not effective against the world at large.  [Citations.]'  [Citations.]  On the other hand, the law recognizes that enjoined parties 'may not nullify an injunctive decree by carrying out prohibited acts with or through nonparties to the original proceeding.  [Citations.]'  [Citation.]"  (*Planned Parenthood Golden Gate v. Garibaldi* (2003) 107 Cal.App.4th 345, 352-353.)

"Under the common law, an injunction binds not only the defendant but also servants or agents and those in collusion with the defendant.  [Citations.]"  (*Superior Care Facilities v. Workers' Comp. Appeals Bd.* (1994) 27 Cal.App.4th 1015, 1029.)  Even persons not named in an injunction may nevertheless be held in contempt for violating it "if they were '"acting in concert with or in support of . . . the enjoined party [and were] in fact his aiders and abettors." [Citations.]'  [Citation.]"  (*Astourian v. Superior Court* (1990) 226 Cal.App.3d 720, 725.)

Obviously, Robert caused Maverik to encumber the Beverly Building.  Maverik was only the glove, and Robert was the hand inside.  Robert was the "Managing Partner" of Maverik.  It is fairly inferable that it was Robert who actually signed the trust deeds on behalf of Maverik;**6** certainly it was not Jessie or the receiver.  Moreover, Robert was the beneficiary of one of the trust deeds, and his girlfriend was the beneficiary of the other

---

**6**    In his opposition declaration, Robert stated that copies of the trust deeds were "[a]ttached," but conveniently, he failed to attach them.

two.  The trial court could properly find that Robert encumbered the property in concert with Maverik, and therefore that Robert violated the injunction.  Finally, based on the violation of the injunction, it could void the encumbrances.  (*Powell v. Bank of Lemoore* (1899) 125 Cal. 468, 472 [sale in violation of injunction is voidable].)

We therefore conclude that Robert has not identified any error affecting the trial court's order striking the trust deeds.

## VI

## DISPOSITION

The March 19, 2012 order, approving the sale and striking the three trust deeds, is affirmed.  With respect to the order of April 9, 2012, striking the lis pendens, the appeal is dismissed.  Jessie is awarded costs on appeal against Robert.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____
J.

We concur:


HOLLENHORST_____
            Acting P. J.


MILLER_____
            J.